**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GATOR.COM CORP.,
        *Plaintiff-Appellant,*

v.

L.L. BEAN, INC.,
        *Defendant-Appellee.*

No. 02-15035

D.C. No.
CV-01-01126-MEJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Maria-Elena James, Magistrate Judge, Presiding

Argued and Submitted
June 22, 2004—San Francisco, California

Filed February 15, 2005

Before: Mary M. Schroeder, Chief Judge,
Warren J. Ferguson, Diarmuid F. O'Scannlain,
Pamela Ann Rymer, A. Wallace Tashima, Susan P. Graber,
M. Margaret McKeown, William A. Fletcher,
Ronald M. Gould, Richard A. Paez, and Jay S. Bybee,
Circuit Judges.

Opinion by Judge O'Scannlain;
Concurrence by Judge Tashima;
Dissent by Judge W. Fletcher

1833

## COUNSEL

Michael Traynor, Cooley Godward LLP, San Francisco, California, argued the cause for the appellant; Thomas J. Friel, Jr., and Brian E. Mitchell, Cooley Godward LLP, San Francisco, California, and L. Scott Primak, Redwood City, California, were on the briefs.

Daniel J. Bergeson and Melinda M. Morton, Bergeson, LLP, San Jose, California, were substituted as counsel for the appellant after oral argument.

Peter J. Brann, Brann & Isaacson, Lewiston, Maine, argued the cause for the appellee; Kevin J. Beal, Brann & Isaacson, Lewiston, Maine, was on the brief.

Alan E. Untereiner, Kathryn Schaefer Zecca, and Max Huffman, Robbins, Russell, Englert, Orseck & Untereiner LLP, Washington, D.C., and Robin S. Conrad and Stephanie A. Martz, Washington, D.C., were on the brief for amicus curiae The Chamber of Commerce of the United States.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a declaratory judgment action initiated to determine the legality of a software vendor's pop-up

advertising program is rendered moot by a settlement under which the vendor permanently modified its software and the website owner relinquished all claims.

## I

Gator.com Corporation[1] is the proprietor of a software program that enables computer users to store personal information—including addresses, credit card numbers, and passwords—in a "digital wallet." When a website prompts the user for such information, Gator's digital wallet automatically inputs it. The program also provides users with discount coupons and other special offers that "pop up" on the computer screen when the user visits certain websites preselected by Gator. Until November 20, 2004, one of the targets of Gator's pop-up advertisements was the website operated by L. L. Bean, Inc., a clothing manufacturer that sells its products over the Internet, via a mail-order catalog, and in retail stores. When a user of computer equipment on which the Gator software was installed visited L. L. Bean's website, the program triggered a discount coupon for Eddie Bauer—an L. L. Bean competitor—to appear on the screen.

## A

In a cease-and-desist letter sent to Gator in March 2001, L. L. Bean alleged that these pop-up advertisements misappropriated the good will associated with its trademark and threatened to initiate legal action if Gator did not discontinue this advertising practice. Gator responded by filing suit against L. L. Bean in the United States District Court for the Northern District of California. Gator requested a declaratory judgment that its program "does not infringe or dilute, directly or contributorily, any trademark held by [L. L. Bean] and does not constitute unfair competition, a deceptive or unfair trade or

---

[1]Gator.com Corporation is now known as the Claria Corporation. For ease of reference, it will be referred to as "Gator" throughout.

sales practice, false advertising, fraud or any other violation of either federal or state law." Compl. at 4. Gator sought no other forms of relief.

L. L. Bean moved to dismiss the suit on the ground that the district court lacked personal jurisdiction because L. L. Bean was incorporated and headquartered in Maine and maintained no physical presence in California. Upon concluding that both general and specific personal jurisdiction over L. L. Bean were absent, the district court granted the motion to dismiss. Gator timely appealed.

## B

After the parties had briefed the personal jurisdiction issue and the en banc court had heard oral argument, the parties jointly informed us that they had reached a confidential settlement of other litigation in which they were involved. The parties assured us, however, that the settlement "does not provide for the dismissal of this appeal." Joint Letter of Sept. 1, 2004. Mindful of our constitutional obligation to police jurisdictional matters assiduously, we nevertheless requested a copy of the settlement agreement, which the parties submitted under seal.[2]

Under the terms of the settlement, Gator agreed to place no

---

[2]Because the parties emphasized to us the confidential nature of their settlement, we permitted the agreement to be filed under seal and instructed the parties to submit a copy of any sealing order. Upon reviewing their submission, we learned that no court had actually ordered that the agreement be sealed. In the absence of such an order, it is appropriate for us to disclose the settlement agreement's content because the outcome of our mootness inquiry hinges upon those specifics. *Cf.* Circuit Advisory Committee Note to Ninth Circuit Rule 27-13 ("any portion of the district court or agency record *that was sealed below* shall remain under seal upon transmittal to this court" (emphasis added)). In any event, none of the provisions that we discuss implicates the parties' proprietary information or trade secrets.

more than twenty-five pop-up advertisements per month on the L. L. Bean website between August 21, 2004, and November 20, 2004. The agreement further provided that, after this three-month period had elapsed, Gator would permanently discontinue the use of all such advertisements on the L. L. Bean website. Gator also agreed to make a monetary payment to L. L. Bean. In exchange for these concessions, L. L. Bean renounced all claims arising from Gator's use of pop-up advertisements prior to—or in accordance with—the agreement.

Regarding this litigation, the parties agreed:

> L. L. Bean may, at its sole discretion, require [Gator] to file an agreed upon motion to dismiss the appeal without costs to any party; if the decision of the United States District Court for the Northern District of California issued on November 21, 2001 is affirmed, finally, then [Gator] shall pay L. L. Bean an additional $10,000; in the event the decision of the United States District Court for the Northern District of California issued on November 21, 2001 is not affirmed, finally, no payment shall be owed to any party.

Settlement Agreement ¶ 3.2.

After reviewing the settlement agreement, we issued an order to show cause why this appeal should not be dismissed as moot. Both parties have submitted responses opposing dismissal.

## II

**[1]** It is an inexorable command of the United States Constitution that the federal courts confine themselves to deciding actual cases and controversies. *See* U.S. CONST. art. III, § 2, cl. 1. For a case to fall within the parameters of our limited

judicial power, "it is not enough that there may have been a live case or controversy when the case was decided by the court whose judgment we are reviewing." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). Rather, Article III requires that a live controversy persist throughout all stages of the litigation. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974) ("an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed"). Where this condition is not met, the case has become moot, and its resolution is no longer within our constitutional purview. *See Foster v. Carson*, 347 F.3d 742, 747 (9th Cir. 2003) ("We do not have the constitutional authority to decide moot cases."). Because "[m]ootness is a jurisdictional issue," *id.* at 745, we are obliged to raise it *sua sponte*. *See Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004).

**[2]** The limitations that Article III imposes upon federal court jurisdiction are not relaxed in the declaratory judgment context. Indeed, the case-or-controversy requirement is incorporated into the language of the very statute that authorizes federal courts to issue declaratory relief. *See* 28 U.S.C. § 2201 ("*In a case of actual controversy within its jurisdiction*, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." (emphasis added)). The "test for mootness in the context of a case, like this one, in which a plaintiff seeks declaratory relief . . . is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174-75 (9th Cir. 2002) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Stated another way, the " 'central question' " before us is " 'whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.' " *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 925 n.4 (9th Cir.

2000) (quoting 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.3, at 268 (1984)).

### A

**[3]** The Supreme Court has repeatedly held that the requisite case or controversy is absent where a plaintiff no longer wishes—or is no longer able—to engage in the activity concerning which it is seeking declaratory relief.

In *Golden v. Zwickler*, 394 U.S. 103, 105-06 (1969), for example, the plaintiff sought a declaratory judgment that it was unconstitutional for the State of New York to prohibit him from distributing anonymous election leaflets about a specific member of Congress seeking re-election. The Supreme Court dismissed the case as moot because, after the case was brought, the member of Congress in question was appointed to serve as a state court judge. *Id.* at 109-10. The plaintiff was thus no longer able to engage in the electioneering activity about which he had requested declaratory relief. *Id.* at 109.

Similarly, in *Steffel v. Thompson*, 415 U.S. at 454-55, the plaintiff sought a declaratory judgment that a state criminal trespass statute was being applied in a manner that deprived him of his First Amendment right to distribute handbills protesting the Vietnam War. After the suit was filed, however, the United States sharply decreased its military presence in Southeast Asia. *Id.* at 460. The Court therefore instructed the district court to determine on remand whether this development had neutralized the petitioner's desire to engage in handbilling and thereby mooted the case. *See id.* ("it will be for the District Court on remand to determine if subsequent events have so altered petitioner's desire to engage in handbilling at the shopping center that it can no longer be said that this case presents a substantial controversy" (internal quotation marks omitted)).

We have confronted similar cases. In *Blair v. Shanahan*, 38 F.3d 1514, 1519-20 (9th Cir. 1994), for example, we expressly relied upon *Golden* and *Steffel* to dismiss an appeal as moot. There, the plaintiff sought a declaratory judgment invalidating a California statute banning aggressive panhandling. *Id.* at 1516-17. Although the plaintiff had previously been a panhandler, by the time that he filed suit he had obtained employment and had thus stopped begging for money. *Id.* at 1517. In concluding that these changed circumstances mooted the case, we explained that "Blair lacks the personal stake necessary to litigate his request for a declaratory judgment because he no longer wishes to engage in the activity proscribed by the statute that he is challenging." *Id.*; *see also Sellers v. Regents of the Univ. of Cal.*, 432 F.2d 493, 500 (9th Cir. 1970) (holding that an actual controversy was absent where a request for a declaratory judgment invalidating a university resolution governing the public use of school facilities was brought by plaintiffs who did not intend to hold any future gatherings in those facilities); *cf. RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056-57 (9th Cir. 2002) (concluding that the plaintiffs lacked standing to request a declaratory judgment invalidating a city noise ordinance because they no longer owned the night club that had previously been subject to the ordinance).[3]

---

[3]Because *Golden* and *Blair* involve a *plaintiff's* cessation of the conduct about which declaratory relief is being sought, they are consistent with other decisions in which we have found a live controversy even after the *defendant* unilaterally discontinued the activity that prompted the plaintiff to file suit. *See, e.g.*, *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003) ("a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" (internal quotation marks omitted)). Indeed, defendants who argue that a case has been mooted by their voluntary cessation of allegedly wrongful conduct must meet a very high burden because a mootness-based dismissal would "leave the defendant . . . free to return to his old ways." *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1238 (9th Cir. 1999) (alteration in original; internal quotation marks omitted). This consideration is absent where the plaintiff voluntarily discontinues the activity concerning which it is seeking declaratory relief. *Cf. id.* at 1237 (while "the victim can moot her need for injunctive relief by her own conduct, . . . the alleged wrongdoer can not moot the need for injunctive relief as easily").

B

**[4]** The lessons of *Golden* and its progeny guide our mootness inquiry in this case. Here, Gator filed suit to obtain a declaratory judgment that its practice of placing pop-up advertisements on L. L. Bean's website did not constitute copyright infringement, false advertising, trademark dilution, or unfair competition. In accordance with the parties' settlement agreement, however, Gator has since permanently discontinued its use of pop-up advertisements on L. L. Bean's website. Like the ex-handbiller in *Golden* and the one-time panhandler in *Blair*, Gator is therefore unable to obtain a declaratory judgment because it "no longer wishes to engage in the activity" concerning which it initially sought declaratory relief. *Blair*, 38 F.3d at 1520. The unavailability of declaratory relief is reinforced by the fact that L. L. Bean has released Gator from all liability associated with the pop-up advertisements previously displayed on L. L. Bean's website. *See Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995) (holding that a patent holder's renunciation of all infringement claims arising from the products currently manufactured by a competitor mooted the competitor's request for a declaratory judgment of patent invalidity).

**[5]** Because the parties' settlement agreement has wholly eviscerated the dispute that prompted Gator to initiate this suit, Gator's request for declaratory relief no longer gives rise to a live case or controversy. *See Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1989) ("A case or controversy exists justifying declaratory relief only when the challenged . . . activity . . . has not evaporated or disappeared" (internal quotation marks omitted)).

C

**[6]** Notwithstanding the fact that Gator is now ineligible for declaratory relief, the parties argue that a live controversy

remains before us because the settlement agreement requires Gator to pay L. L. Bean $10,000 if we affirm the district court's jurisdictional dismissal. Although several decisions have indeed found the existence of a live controversy after the parties entered into a contingent settlement agreement, those decisions are not controlling on the facts before us.

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 367 (1982), for example, the plaintiffs requested monetary—as well as declaratory and injunctive—relief under the Fair Housing Act. After the court of appeals held that the plaintiffs had standing to pursue their claim, the parties agreed that the plaintiffs would receive $400 and no further relief if the Supreme Court denied certiorari or granted certiorari and affirmed; if the Court granted certiorari and reversed, neither party would owe the other anything. *Id.* at 371. The Court held that the case was not moot because the settlement agreement merely liquidated the monetary damages that the plaintiffs had been seeking all along. *See id.* (emphasizing that the plaintiffs "continue to seek damages to redress alleged violations of the Fair Housing Act").

Similarly, in *Nixon v. Fitzgerald*, 457 U.S. 731, 739-40 (1982), the plaintiff sought civil damages from former President Nixon on the ground that he had been terminated from his Air Force job as a result of impermissible government retaliation. After the court of appeals ruled that Nixon was not entitled to absolute immunity, the parties agreed that the plaintiff would receive $28,000 if the Supreme Court determined that the President was not entitled to absolute immunity and no payment if the Court concluded otherwise. *Id.* at 743-44. The Court relied upon *Havens* to hold that the case was not moot. *Id.* at 744.

**[7]** *Havens* and *Nixon* can be readily distinguished from the instant case because neither decision is a declaratory judgment action. Instead, both cases involve plaintiffs who were seeking monetary damages and who agreed to accept a liqui-

dated payment if they prevailed on appeal. The contingent settlement agreements therefore preserved a live controversy because they afforded these plaintiffs the opportunity to obtain meaningful monetary relief—the very type of relief that they sought to recover by filing suit in the first place. In contrast, Gator initiated this suit to obtain a declaratory judgment, but we can no longer grant that relief because Gator has agreed to terminate its pop-up advertisements and has been released from liability for its past conduct. Thus, unlike in *Havens* and *Nixon*, the contingent payment for which the parties' settlement provides does not preserve Gator's ability to recover any of the relief upon which this suit was initially premised.

Because we can no longer award Gator any meaningful relief, the personal jurisdiction issue upon which the $10,000 payment hinges is a mere vestige of the parties' now extinguished dispute. *See In re Pattullo*, 271 F.3d 898, 901 (9th Cir. 2001) ("If an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal is moot and must be dismissed . . . ." (internal quotation marks omitted)). Although the parties have negotiated a "side bet" concerning our resolution of this appeal, that wager does not alter the fact that the personal jurisdiction issue is wholly divorced from any live case or controversy.[4]

---

[4] The settlement agreement also provides that Gator must move to dismiss the appeal if L. L. Bean so requests, and it is therefore conceivable that L. L. Bean could have compelled Gator to seek a dismissal if our resolution of the personal jurisdiction issue had been unfavorable to L. L. Bean. The fact that the settlement may endow L. L. Bean with the authority to control the outcome of this appeal bolsters our conclusion that we are not confronted by adverse parties litigating an actual controversy. We do not, however, express any views regarding whether we are obliged to grant an unopposed motion to dismiss filed after an opinion is announced but before the mandate is issued. *But see Okla. Radio Assocs. v. FDIC*, 3 F.3d 1436, 1444 (10th Cir. 1993) (refusing to grant such a motion).

### III

**[8]** There is no live controversy before us because the parties' settlement agreement has resolved all facets of their dispute and has thereby mooted this appeal. If we were to reach the merits of the personal jurisdiction issue that remains before us, we would run squarely afoul of the Supreme Court's admonition "to avoid advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48 (1969); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.").

In undertaking our mootness inquiry, we have not overlooked the fact that the judicial system has already invested significant resources in this case. "To abandon the case at an advanced stage may prove more wasteful than frugal," and a flexible application of the mootness doctrine may therefore be appropriate. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 191-92 (2000). While mootness analysis must therefore eschew undue formalism, it must nevertheless operate within the well-defined contours of Article III. The Supreme Court has accordingly explained that this "argument from sunk costs [to the judiciary] does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lacks a continuing interest, *as when the parties have settled.*" *Id.* at 192 (emphasis added; footnote omitted).

Because the bounds of our judicial power cannot be overstepped for the sake of expediency, we must await another opportunity to resolve the important issues of personal jurisdiction originally raised by this appeal. Although it is emphatically the province of the judiciary "to say what the law is," *Marbury v. Madison*, 5 U.S. 137 (1 Cranch) 137, 177 (1803),

the Constitution is equally emphatic that we may do so only in the course of deciding a live case or controversy.

**DISMISSED.**

TASHIMA, Circuit Judge, with whom RYMER and McKEOWN, Circuit Judges, join, concurring:

Even assuming that the dissent is correct that the parties continue to contest — with a monetary stake in the outcome — the *issue* of personal jurisdiction, that does not amount to an Article III "case or controversy." The case or controversy at stake in this litigation was whether Gator's pop-up ad program violated L.L. Bean's trademark and other primary rights. As the court concludes — and the dissent does not challenge — *that* controversy has been concluded by the settlement agreement.

The remaining "controversy" of whether the California courts can assert personal jurisdiction over L.L. Bean will settle no dispute between the parties involving any of their primary rights. For it involves only the subsidiary, threshold issue of whether a California court has the power to adjudicate the parties' dispute. But, under the settlement agreement, no dispute — no case or controversy — involving any of the parties' primary rights remains. Thus, as the court's opinion aptly states, the $10,000 is truly only a "side bet." If we were to hold that the district court could assert personal jurisdiction over L.L. Bean, there remains no case or controversy over which that hypothetical jurisdiction could be asserted.

For these reasons, this case differs from *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), and *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), the two cases on which the dissent primarily relies. In both of those cases, recovery of the reserved, contingent payment would vindicate a primary right

of the plaintiff — in *Havens*, as damages for violation of the plaintiffs' rights under the Fair Housing Act, 455 U.S. at 371 ("[R]espondents continue to seek damages to redress alleged violations of the Fair Housing Act. The letter agreement . . . would merely liquidate those damages."), and in *Fitzgerald*, as damages for the wrongful termination of the plaintiff's employment, 457 U.S. at 743-44 (characterizing the settlement agreement as "an agreement to liquidate damages," and citing *Havens*).[1] Here, the outcome of the side bet would determine only whether the district court hypothetically could adjudicate a no-longer-existent dispute. No Article III case or controversy remains.

With this additional observation, I fully concur in Judge O'Scannlain's opinion for the court.

---

W. FLETCHER, Circuit Judge, with whom GRABER and PAEZ, Circuit Judges, join, dissenting:

The majority concludes that this appeal is moot because "the parties' settlement agreement has resolved all facets of their dispute." Maj. Op. at 1846. This is not true. One "facet[ ] of their dispute" — indeed, the only question at issue in the appeal — has not been resolved.

---

[1]The dissent also relies on our cases asserting jurisdiction to decide attorneys' fees and costs after a case is settled and contends that if this case is moot, those cases, *Ass'n of Cal. Water Agencies v. Evans*, 386 F.3d 879 (9th Cir. 2004), and *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999), were "wrongly decided." But, as the dissent's quotation from *Zucker* itself makes clear, costs and fees clearly come under the district court's ancillary jurisdiction. *See id.* at 1329 (noting that attorneys' fees "are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot"). The dissent does not contend that the remaining "controversy" here over personal jurisdiction comes under the court's ancillary jurisdiction.

The parties continue to dispute whether a federal district court in California has personal jurisdiction over L.L. Bean. They have disputed this since the beginning of this litigation. Both parties had, and still have, an interest in our resolution of that dispute. Depending on how we resolve it, either Gator owes L.L. Bean $10,000 or it does not. Nothing more is required for our continuing jurisdiction.

I

Gator sued L.L. Bean in the United States District Court for the Northern District of California seeking a declaratory judgment that its pop-up ads did not infringe L.L. Bean's trademark or other proprietary rights, and that it was not engaging in any unfair or deceptive trade practices. L.L. Bean is a Maine corporation with its principal place of business in Maine. It advertises in California, both by mail and over the internet, and it sells significant quantities of retail merchandise to consumers in California. However, L.L. Bean owns no property in California and has no employees based in California. The district court granted L.L. Bean's motion to dismiss for lack of personal jurisdiction. A three-judge panel of this court reversed, holding that L.L. Bean's activities conferred general (not merely specific) jurisdiction in California. We vacated the panel decision and took the appeal en banc. After the appeal had been briefed and argued to the en banc panel, and after a draft opinion had been circulated, the parties entered into a partial settlement agreement.

Under the agreement, Gator agreed to cease using the pop-up ads and to pay L.L. Bean a substantial monetary settlement. In return, L.L. Bean agreed to release Gator from any further liability. Gator also agreed to pay L.L. Bean an additional $10,000 if we hold that it improperly sued L.L. Bean in California. If we hold that its suit was proper, Gator owes no additional money.

## II

For an Article III court to have jurisdiction, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). When an actual controversy ceases to be present, a case is moot, and it is properly dismissed for lack of jurisdiction. Mootness has sometimes been referred to as the "doctrine of standing set in a time frame." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). But the Supreme Court recently noted in *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000), that this phrase is misleading, for it suggests that the personal stake necessary to support jurisdiction is the same for both standing and mootness. The Court made clear in *Laidlaw* that this is not so. The Court emphasized that mootness is a more flexible doctrine than standing, and that mootness should cause a waste of judicial resources by dismissal of cases that have been fully litigated in lower courts. Under *Laidlaw,* an interest that would not support standing at the beginning of a suit may well be sufficient to avoid mootness in the late stages of a suit.

The Court wrote:

> Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated, often (as here) for years. To abandon the case at an advanced stage may prove more wasteful than frugal. This argument from sunk costs [to the judicial system] does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lacks a continuing interest, as when the parties have settled or a plaintiff pursuing a non-surviving claim has died. But the argument surely

> highlights an important difference between the two doctrines. *See generally Honig v. Doe*, 484 U.S. 305, 329-332 (1988) (REHNQUIST, C.J., concurring).

*Id.* at 191-92 (some citations omitted). Chief Justice Rehnquist, in the concurrence cited by the Court in *Laidlaw*, specifically argued for a relaxed view of mootness. He wrote:

> The logical conclusion to be drawn from these cases, and from the historical development of the principle of mootness, is that while an unwillingness to decide moot cases may be connected to the case or controversy requirement of Art. III, it is an attenuated connection that may be overridden where there are strong reasons to override it.

*Honig*, 484 U.S. at 331 (1988) (Rehnquist, C.J., concurring).

Under *Laidlaw*, a case is moot only when "one or both of the parties plainly lacks a continuing interest" in the outcome of the litigation. In this case, the parties retain a monetary interest of $10,000 in the outcome of the jurisdictional appeal. The Supreme Court has twice held that a contingent payment of this kind is sufficient to save an appeal from mootness. In *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), a black "tester" and his employer sued a realty company and one of its employees for "racial steering" in violation of the federal Fair Housing Act. Plaintiffs were dismissed by the district court for lack of Article III standing. The court of appeals reversed, and the defendants sought certiorari on the jurisdictional question of standing.

While the certiorari petition was pending, the parties reached a partial settlement agreement. If the Supreme Court denied certiorari, or granted certiorari and affirmed, the plaintiffs would each receive $400. If, on the other hand, the Court granted certiorari and reversed, plaintiffs would get nothing. In other words, if the plaintiffs were right that the district

court had jurisdiction, they would each get $400. If they were wrong, they would get nothing. The Supreme Court held that the defendants' contingent obligation to pay each plaintiff $400 saved the case from mootness: "If respondents have suffered an injury that is compensable in money damages, the fact that they have settled on a measure of damages does not make their claims moot." 455 U.S. at 371.

In *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), decided the same Term, plaintiff Fitzgerald sued President Nixon and other executive branch officials for damages, contending that the defendants had unlawfully retaliated against him for testimony he had given to a congressional committee. President Nixon contended that he was protected from suit by absolute official immunity, and that the suit should be dismissed. Absolute immunity "is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). The district court and court of appeals rejected this defense, and the Supreme Court granted certiorari. While the certiorari petition was pending, Fitzgerald and Nixon had reached a partial settlement agreement under which Nixon paid Fitzgerald $142,000. If the Court held that Fitzgerald's suit could go forward, he would receive an additional $28,000. However, if his suit was dismissed, he would receive no additional money. Citing *Havens Realty*, the Court held that the contingent obligation to pay $28,000 saved the appeal from mootness: "The limited agreement between the parties left both petitioner and respondent with a considerable financial stake in the resolution of the question presented in this Court." *Id.* at 744.

The Third Circuit has addressed this issue twice, holding both times that contingent obligations to pay money saved appeals from mootness. In *Keefe v. Prudential Property and Casualty Insurance Co.*, 203 F.3d 218 (3rd Cir. 2000), the parties entered into a partial settlement while the case was on appeal:

> Prudential has agreed to pay Keefe one amount if Prudential's argument prevails; a second (and higher) amount if we do not decide the issue; and a third (and still higher) amount if Keefe's argument prevails.

*Id*. at 223. Citing *Havens Realty*, the court held that the partial settlement did not moot the appeal. It wrote that the parties' "positions are truly adverse with respect to the critical legal issue that they ask us to resolve, and the dispute between them is not feigned." *Id*. at 224.

In *Wheeling-Pittsburgh Steel Corp. v. United Steel Workers of America*, 791 F.2d 1074 (3rd Cir. 1986), Wheeling-Pittsburgh Steel declared bankruptcy. As debtor-in-possession it received permission from the bankruptcy court to reject its collective bargaining agreements. The district court affirmed, and the Steel Workers' union appealed. While the appeal was pending, the parties agreed to modify the collective bargaining agreement, thereby settling almost all of their dispute. Only a dispute over a relatively small amount owed to plant guards remained. The part of the dispute that was settled was worth about $360,000,000; the dispute over the guards' pay was worth about $146,000. The court recognized that the contingent obligation of $146,000 was a means to get an appellate decision on Wheeling-Pittsburgh's ability to reject a collective bargaining agreement. Nonetheless, citing *Havens Realt*y and *Fitzgerald*, the court held that the continuing dispute about the guards' pay was not a "mere contrivance." *Id.* at 1079. "Although the Union has candidly admitted that it has an interest in securing a ruling on the merits above and beyond the satisfaction of the plant guards' claims, its motivating interest in securing a precedent does not render the case nonjusticiable as long as there are, in fact, stakes at issue." *Id.* at 1080.

Gator and L.L. Bean remain adverse on the personal jurisdiction question. They litigated this question vigorously in the

district court; they litigated it vigorously before the three-judge panel; and they litigated it vigorously before the en banc panel. They both contend, in their post-argument briefs to the en banc panel, that they continue to be adverse and that Gator's appeal is not moot.

The parties have a jurisdictional question about which they are in vigorous disagreement, and they have a financial stake in its resolution. This is all that is required under *Havens Realty*, *Fitzgerald*, *Keefe*, and *Wheeling-Pittsburgh Steel*. Indeed, this case is remarkably similar to both *Havens Realty* and *Fitzgerald*, in which relatively small contingent payments were enough to save appeals on the jurisdictional and quasi-jurisdictional questions of standing and official immunity from suit. In the words of the Supreme Court, this appeal presents a controversy that is "definite and concrete, touching the legal relations of parties having adverse legal interests" *Havens Realty*, 455 U.S. at 371. Accordingly, it is not moot.

## III

## A

The majority concludes that L.L. Bean's appeal is moot because Gator sought a declaratory judgment, and because the partial settlement eliminated the need for that remedy when Gator agreed to cease using pop-ups. According to the majority, the Supreme Court has "repeatedly held that the requisite case or controversy is absent where a plaintiff no longer wishes — or is no longer able — to engage in the activity concerning which it is seeking relief." Maj. Op. at 1841. The majority principally relies on two Supreme Court cases.

The most recent is *Steffel v. Thompson*, 415 U.S. 452 (1974). Plaintiff sought a declaratory judgment that he could not be criminally prosecuted for leafleting at a shopping center against the Vietnam War and United States foreign policy in Southeast Asia. The Supreme Court took the case to

resolve an unsettled issue of equitable abstention under *Younger v. Harris*, 401 U.S. 37 (1971). The Court decided the case in 1974. The last United States troops left Vietnam in late March 1973. Referring to "recent developments reducing the Nation's involvement in that part of the world," the Court remanded to the district court for a determination whether there was "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Steffel*, 415 U.S. at 460 (internal quotation omitted). Given the withdrawal of United States troops and the end of the war, it was most unlikely that Steffel had a continuing interest in leafleting against the war and United States policy in Southeast Asia. Notwithstanding this, the court did not hold his appeal moot. Before remanding, the Court decided the merits of the *Younger* issue presented in the appeal.

The other case is *Golden v. Zwickler*, 394 U.S. 103 (1969), decided five years before *Steffel*. Zwickler had sought a declaratory judgment that a New York statute prohibiting the distribution of anonymous campaign literature was unconstitutional. By the time the appeal came before the Supreme Court, the congressman whom Zwickler had opposed was no longer in Congress and was "most unlikely" to run again. *Id.* at 109. Under these circumstances, the Court held that there was no longer a case or controversy under Article III.

There is an obvious tension between *Steffel* and *Zwickler*, and the status of *Zwickler* as a precedent may be in some doubt. However, even assuming that *Steffel* and *Zwickler* can be reconciled and that both cases are good law, neither case answers the mootness question here. In neither *Steffel* nor *Zwickler* — nor indeed in any declaratory judgment case cited by the majority — did the parties ever seek anything other than a declaratory judgment. In none of the cases cited by the majority did the parties enter into a partial settlement agreement, and in none of these cases did a monetary stake depend on the resolution of the appeal.

## B

Declaratory judgments are often inverted lawsuits. That is, the plaintiff seeking the declaratory judgment is often the party who would be the defendant in a coercive suit for damages or an injunction. Such was the case here. Gator, the declaratory judgment plaintiff, had no claim for damages or injunctive relief against L.L. Bean. Rather, L.L. Bean was the party with claims for damages and injunctive relief. In a case like this one, the declaratory judgment is little more than a forum choice device, permitting a would-be defendant in a damages and injunction suit to litigate in a favorable forum.

It is immaterial for purposes of our jurisdiction that this suit initially took the form of a declaratory judgment suit by Gator rather than a coercive suit for damages and an injunction by L.L. Bean. As the Supreme Court wrote in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (citations omitted, emphasis added):

> [T]he question in each [declaratory judgment] case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case.*

Gator's suit is not only about declaratory relief. If there is personal jurisdiction over L.L. Bean in California, as the three-judge panel held, it is inescapably also about damages and injunctive relief.

If the federal district court in California had personal jurisdiction over L.L. Bean, as the three-judge panel held it did, L.L. Bean would have been forced to bring its suit for dam-

ages and injunctive relief as a compulsory counterclaim. *See, e.g., Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508 (1959) (noting in a declaratory judgment action that a counterclaim would have been compulsory under Fed. R. Civ. P. 13(a)). The nature of the partial settlement entered into by Gator and L.L. Bean clearly reflects the fact that, if the three-judge panel was right, Gator's declaratory judgment suit was inevitably, as well, a countersuit for damages and injunctive relief. Under the settlement, Gator agreed to make a substantial monetary payment to L.L. Bean and agreed to cease delivering pop-up ads, just as it would have been required to do if L.L. Bean had prevailed on its compulsory counterclaim for damages and injunctive relief.

The $10,000 contingent payment is not a "side bet" on our determination of the jurisdictional issue. It is, instead, a contingent monetary recovery for L.L. Bean, to be added to the substantial recovery already received, if we hold that Gator improperly sued L.L. Bean in California. This contingent recovery approximates the court costs, and possibly attorneys' fees, that Gator would owe if we affirmed the district court's dismissal of its suit.

When the parties entered into their partial settlement agreement, the following had occurred: The district court had dismissed Gator's suit for want of personal jurisdiction. A three-judge panel of this court had then reversed the district court, holding that L.L. Bean is subject to general jurisdiction. We then vacated the panel decision and took the appeal en banc. Before we issued our en banc decision, the parties settled. When they settled, it was entirely possible that we would affirm the district court. If we had affirmed, this would have triggered an award of costs and possibly attorneys' fees.

We routinely hear appeals of costs and of attorneys' fees awards when that is all that remains in dispute. For example, in *Miles v. California*, 320 F.3d 986 (9th Cir. 2003), plaintiffs' suit was dismissed under the Eleventh Amendment

because the district court lacked jurisdiction. The district court awarded costs of $12,238.64. We heard the plaintiffs' appeal of the cost order even though the underlying case had been dismissed. In *Association of California Water Agencies v. Evans*, 386 F.3d 879 (9th Cir. 2004), plaintiffs' suit was dismissed as moot because the defendants ceased the activity of which plaintiffs had complained. The district court awarded attorneys' fees of $304,530 and costs of $13,211 to plaintiffs. We heard defendants' appeal of the attorneys' fees award even though the underlying suit was moot.

In this case, L.L. Bean would have been entitled to costs if we had affirmed the district court's dismissal. *See* 28 U.S.C. § 1919 (authorizing a district court to award just costs when a case is dismissed for lack of jurisdiction). It may also have been entitled to attorneys' fees if we had affirmed. L.L. Bean had sent a cease-and-desist letter to Gator, which prompted Gator's declaratory judgment suit. In that letter, L.L. Bean had threatened Gator with suit, stating that a recovery of attorneys' fees was likely: "Given that your conduct is clearly intentional, it is also likely that L.L. Bean will recover its attorneys' fees in connection with any lawsuit brought in connection with these claims." Gator agreed that attorneys' fees were potentially at stake. Referring to L.L. Bean's cease-and-desist letter, it wrote in its complaint: "This litigation could subject Plaintiff to liability for . . . attorneys' fees." *See* 15 U.S.C. §§ 1125(c)(2) and 1117(a) (attorneys' fees in trademark cases); *Walker v. Countryside Home Loans, Inc.*, 121 Cal. Rptr. 2d 79, 94 (Cal. Ct. App. 2002) (explaining that attorneys's fees may be available in suits brought under California's unfair competition law pursuant to Cal. Civ. Pro. Code § 1021.5).

Given the virtual certainty of a cost award and the possibility of an attorneys' fees award if we affirmed the district court's jurisdictional dismissal, the parties' agreement to a payment of $10,000 contingent on affirmance is readily understandable. Under the partial settlement, Gator made a

substantial payment to L.L. Bean in return for a release from further liability on the merits of L.L. Bean's claims. Except for the $10,000 contingent obligation, there was no provision in the agreement for payment of court costs or attorneys' fees. The amount of such costs and fees was uncertain, particularly given the need to discount the attorneys' fees by the quite low probability of their being awarded at all. In this circumstance, the contingent obligation of Gator to pay L.L. Bean $10,000 reasonably approximates, and "liquidates," costs and attorneys' fees.

The Supreme Court in *Havens Realty* specifically held that such a liquidation in a settlement agreement saves the appeal from mootness. Referring to the parties' agreement in that case that the defendant would pay $400 to each of the plaintiffs in the event the lower court's jurisdictional dismissal was reversed, the Court wrote:

> The . . . agreement . . . would merely liquidate those damages. If respondents have suffered an injury that is compensable in money damages of some undetermined amount, the fact that they have settled on a measure of damages does not make their claims moot.

455 U.S. at 371. *Havens Realty* is directly controlling in this case. We know that costs and attorneys' fees are a sufficient basis for appeal, even when all other issues in a case have been settled, dismissed, or mooted out. We also know that if Gator and L.L. Bean had agreed to settle their appeal in all respects but costs and attorneys' fees, without specifying what those amounts would be, we would have jurisdiction over the appeal. The only difference is that they have liquidated those amounts and settled on a figure of $10,000. *Havens Realty* specifically tells us that such a liquidation does not moot an otherwise proper appeal.

Judge Tashima would distinguish *Havens Realty* and *Fitzgerald* by pointing out that in those cases recovery of the

"contingent payment would vindicate a primary right of the plaintiff." In his view, once Gator and L.L.Bean settled their underlying dispute, there was no longer any live controversy. He writes:

> The remaining "controversy" of whether the California courts can assert personal jurisdiction over L.L.Bean will settle no dispute between the parties involving any of their primary rights. For it involves only the subsidiary, threshold issue of whether a California court has the power to adjudicate the parties's dispute.

Concurring op. at 1847. Judge Tashima relies on a newly formulated distinction between "primary rights" and some other kind of rights. But no such distinction exists in mootness law. As long as there is a bona fide legal dispute, with tangible consequences for the parties, there is a live controversy.

As our own case law makes clear, we have jurisdiction to decide an appeal where the parties have settled the merits of their underlying dispute, but where they continue to disagree on costs or attorneys' fees. For example, in *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999), plaintiffs brought a securities class action in federal district court. The merits of the suit were settled, but attorneys' fees remained in dispute. The parties did not dispute the amount of fees, but whether fees were owed at all. In Judge Tashima's terminology, there were no longer any "primary rights" at issue because the parties had settled their underlying dispute. We nevertheless had no trouble understanding that the parties' dispute over attorneys' fees was not moot, and that we had jurisdiction to decide it. In affirming the district court's award of attorneys' fees, we wrote: "No Article III case or controversy is needed with regard to attorneys' fees as such, because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot. Its jurisdiction outlasts the 'case or controversy.' "

*Id.* at 1329. *See also Association of California Water Agencies*, 386 F.3d 879 (deciding attorneys' fees on appeal although merits of the underlying suit had been rendered moot by action of the defendant).

Judge Tashima contends that because we referred in *Zucker* to attorneys' fees as an "ancillary matter," we were exercising "ancillary jurisdiction" in that case. Concurring op. at 1848, n.1. From that, he concludes that we have no jurisdiction in this case. But "ancillary matter" and "ancillary jurisdiction" are not synonymous terms, and we did not say in *Zucker* that we were exercising "ancillary jurisdiction." Moreover, no matter what label is attached, it is undisputed that we exercised jurisdiction to decide whether or not attorneys' fees were owed in that case. That is what we are asked to decide in this case. The only difference is that in this case the amount is liquidated.

The only question on which the district court ruled in this case was whether it had personal jurisdiction over L.L. Bean. That was the only question that was appealed to us. The parties continue to dispute that question, and $10,000 depends on our decision. The fact that the parties have settled the underlying dispute does not affect our jurisdiction. To put it another way, if the parties' appeal has become moot because they have settled their underlying dispute, our decisions in *Zucker* and *Association of California Water Agencies* are wrongly decided and must be overruled. Yet neither the majority opinion nor Judge Tashima suggests that they disagree with these decisions.

## IV

In *Laidlaw*, the Supreme Court explicitly cautioned against finding cases moot at advanced stages of litigation when it would be "more wasteful than frugal" to do so. 528 U.S. at 191-92. The majority quotes this passage, but fails to heed it. The jurisdictional issue before us has been fully and vigor-

ously litigated. The settlement was not reached until after briefing and argument were complete. Indeed, it was not reached until after a draft opinion had been circulated. Mootness doctrine is intended to ensure that federal courts make decisions with the benefits of a fully adversarial dispute. *See Geraghty*, 445 U.S. at 397 ("The 'personal stake' aspect of mootness doctrine also serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving."). We have had every benefit the adversarial process has to offer. If we find this appeal moot, we will not be frugally guarding the scarce resources of the federal courts. Rather, we will be wasting them in spectacular fashion.

The Court's caution in *Laidlaw* was not a throwaway remark. Rather, it was a considered statement, coming at the end of a long line of cases in which the Supreme Court has indicated that, more than standing and other Article III justiciability doctrines, mootness has a strong prudential component. One way the Court has made this evident is by carving out numerous exceptions to mootness. An exception is made for cases in which a party voluntarily ceases his offending conduct, but remains "free to return to his old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). Another exception is made for cases that involve wrongs that are "capable of repetition, yet evading review." *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969). Yet another exception is made in class action suits, which are not mooted simply because the named plaintiff's case is moot. *See, e.g., Sosna v. Iowa*, 419 U.S. 393, 399 (1975).

As *Laidlaw* underscores, the Supreme Court is moving toward the prudential mootness doctrine advocated by Chief Justice Rehnquist in his concurrence in *Honig v. Doe*. *See Laidlaw*, 528 U.S. at 192 (citing *Honig v. Doe,* 484, 305, 329-332 (1988) (Rehnquist, C.J., concurring)). Neither the Court nor Chief Justice Rehnquist has yet indicated that they are willing to follow state-court mootness practice. But I note that

almost every state in the union has an exception for cases on appeal that raise questions of "continuing public importance" when the events giving rise to mootness occur after the issue has been fully litigated in the trial court. *See, e.g.*, *Comm. for Rational Predator Mgmt. v. Dep't of Agric.*, 931 P.2d 1188, 1191 (Idaho 1997) ("[I]f the issue is one of substantial public interest, the Court may address the issue for future guidance and direction even if the case is technically moot.")*; Kona Old Hawaiian Trails Group v. Lyman*, 734 P.2d 161, 165 (Haw. 1987) ("[W]hen the question involved affects the public interest, and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made, an exception to the rule is justified.") (internal citation and quotation marks omitted); *State v. Glusman*, 651 P.2d 639, 643 (Nev. 1982) ("It is, however, within the inherent discretion of this Court to consider issues of substantial public importance which are likely to recur, in spite of any intervening event during the pendency of an appeal which has rendered the matter moot."); *Witt v. Watkins*, 579 P.2d 1065, 1071 n.19 (Alaska 1978) ("Where a resolution of a particular question is of significant public interest, we may, in our discretion, resolve it despite the fact that the parties have settled their dispute."); *Sadowski v. Shevin*, 345 So. 2d 330, 331-32 (Fla. 1977) ("Although the questions raised in this case have become moot . . . we feel constrained to retain jurisdiction and resolve the question . . . since this is a matter of great public importance in the administration of the law and is of general interest to the public."); *Leonard v. City of Bothell*, 557 P.2d 1306, 1308 (Wash. 1976) ("This court will, however, review a case which has become moot if it involves matters of substantial public interest."); *Liberty Mut. Ins. Co. v. Fales*, 505 P.2d 213, 215 (Cal. 1973) ("If an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot."); *People ex rel.*

*Guggenheim v. Mucci*, 298 N.E.2d 109, 110 (N.Y. 1973) ("[A]n appeal should not be dismissed as moot if a question of general interest and substantial public importance is likely to recur."); *Ariz. Osteopathic Med. Ass'n v. Fridena*, 463 P.2d 825, 826 (Ariz. 1970) ("We have previously held than an appellate court has discretion to decide questions which have become moot."); *State ex rel. Ronish v. Sch. Dist. No. 1 of Fergus Co.*, 348 P.2d 797, 799-800 (Mont. 1960) (declining to dismiss case as moot in part because it presented question of "great public interest and concern").

We are, of course, not a state court but an Article III court bound by the "case or controversy" requirement. But we should not close our eyes to what the state courts are doing. We should remember that for several decades at the beginning of the last century, the state courts embraced declaratory judgments while the federal courts still believed that a declaratory judgment suit was not a "case or controversy." *See*, *e.g.*, *Muskrat v. United States*, 219 U.S. 346 (1911). Finally, perceiving the great advantages of the declaratory judgment device, and encouraged by the Supreme Court's statements in *Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249 (1933), Congress passed the federal Declaratory Judgment Act in 1934. *See* 28 U.S.C. §2201; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) (upholding constitutionality of the Act). This example reminds us that the federal courts are not the only source of wisdom on matters of jurisdiction and justiciability.

Nor should we close our eyes to the enormous cost of holding cases moot based on events that occur in the last stages of appeal. There is no doubt, to use the phrase commonly used by the state courts, that this appeal presents a question of "continuing public importance." Litigants in this circuit know that the district court in this case dismissed Gator's suit against L.L. Bean for lack of personal jurisdiction. They also know that a three-judge panel of this court reversed the district court, holding that there was general (not merely spe-

cific) jurisdiction over L.L. Bean in California. General jurisdiction over L.L. Bean means that it can be sued in California on any cause of action, irrespective of any connection to the state. Under the three-judge panel's holding, an L.L. Bean employee who lives and works in Maine can sue L.L. Bean in California for unpaid wages.

We vacated the decision of the three-judge panel when we took the appeal en banc, but the panel decision is in the Federal Reporter for anyone to read. *See Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072 (9th Cir. 2003). That decision no longer has the force of law, but it is a clear statement by three judges of this court that, in their view, there is general jurisdiction over L.L. Bean in California. I do not wonder, in light of that decision, that L.L. Bean has been anxious to preserve its right of appeal to the en banc panel, and that it specifically structured its partial settlement with Gator in order to achieve that result.

If we were to decide the jurisdictional question that Gator and L.L. Bean are both asking us to decide and on which $10,000 depends, we would have the opportunity to harmonize our personal jurisdiction decisions, including those upon which the three-judge panel relied. *See*, *e.g.*, *Theo H. Davies & Co., Ltd. v. Republic of the Marshall Islands*, 174 F.3d 969 (9th Cir. 1998); *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848 (9th Cir. 1993); *Shute v. Carnival Cruise Lines, Inc.*, 897 F.2d 377 (9th Cir. 1990) *overruled on other grounds by Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758 (9th Cir. 1990); *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082 (9th Cir. 2000). The disarray in our case law is patent. How else to explain such dramatically different holdings from our judges — one judge dismissing for lack of jurisdiction and three judges holding that there is general jurisdiction? It is not only the litigants in this case that would benefit from an en banc opinion in this appeal. All potential litigants in this circuit would benefit.

V

I do not need to rely on *Laidlaw*, on Chief Justice Rehnquist's concurrence in *Honig*, on the increasing willingness of the Supreme Court to treat mootness as a prudential doctrine, or on the continuing public importance of the question presented in this appeal. Without any of those things, this appeal is not moot. Under long-established Supreme Court case law — *Havens Realty* and *Fitzgerald*, both decided in 1982 — this case continues to present a live controversy sufficient to support our jurisdiction.