FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONAL UNIVERSITY OF HEALTH SCIENCES,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>COUNCIL ON CHIROPRACTIC EDUCATION, INC.,<br>*Defendant-Appellee.* | No. 19-15352<br><br>D.C. No.<br>2:18-cv-01560-NVW<br><br>ORDER AND OPINION |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted July 8, 2020
Portland, Oregon

Filed November 13, 2020

Before: Michael R. Murphy,[*] Mark J. Bennett, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Murphy

---

[*] The Honorable Michael R. Murphy, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY**[\*\*]

**Accreditation**

The panel filed: (1) an order granting a request for publication, recalling the mandate, and withdrawing a memorandum disposition and replacing it with an opinion; and (2) an opinion affirming in part the district court's judgment denying the National University of Health Sciences relief from a decision of the Council on Chiropractic Education, Inc., and dismissing the appeal in part as moot.

The Council accredits chiropractic doctoral degree programs in the United States. It concluded that NUHS was not fully compliant with all accreditation standards but, nonetheless, reaffirmed its accreditation. At the same time, however, the Council notified NUHS it was placing its program on probation. NUHS raised common law due process claims, and the parties proceeded on the assumption that such a claim may be brought and that the arbitrary and capricious standard applies.

The panel expressed no opinion on the validity of common law due process claims challenging decisions relating to accreditation. To maintain recognition by the Secretary of Education, an accrediting agency must comply with 20 U.S.C. § 1099b, which requires the agency to consistently and evenhandedly apply and enforce standards of accreditation and afford due process to the programs it

---

[\*\*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

accredits. NUHS asserted that the Council violated its due process rights because the Council's accreditation standards did not permit it to grant reaffirmation of accredited status and, on the same record, impose probation. The panel held that because the Council's accreditation standards contemplated situations in which a program can remain accredited even if it is not fully in compliance with all accreditation standards, the Council did not act arbitrarily and capriciously when it simultaneously reaffirmed NUHS's accreditation and imposed probation.

Under § 1099b, an accrediting agency must also establish and apply review procedures that comply with due process. The panel held that the Council complied with this requirement because it adequately apprised NUHS of its concerns regarding deficiencies and provided NUHS with multiple avenues to advocate for its position.

The panel concluded that NUHS's final claim regarding national board exams was moot.

---

**COUNSEL**

James B. Hiller (argued), Gordon Rees Scully Mansukhani LLP, Chicago, Illinois; Julia K. Whitelock, Gordon Rees Scully Mansukhani LLP, Alexandria, Virginia; for Plaintiff-Appellant.

Patrick G. Cooke (argued) and Eric J. Skwiat, Swanson Martin & Bell LLP, Chicago, Illinois, for Defendant-Appellee.

**ORDER**

Defendant-Appellee's request for publication, filed on October 19, 2020, is **GRANTED**. The original mandate that issued on September 10, 2020 is recalled. The memorandum disposition filed August 19, 2020 is withdrawn and replaced with an opinion filed concurrently with this order. Further petitions for rehearing or rehearing en banc may be filed pursuant to Ninth Circuit Rule 40-2.

**OPINION**

M. MURPHY, Circuit Judge:

Defendant, the Council on Chiropractic Education, Inc. ("CCE"), accredits chiropractic doctoral degree programs in the United States. Plaintiff, National University of Health Sciences ("NUHS"), runs a program accredited by CCE. When NUHS sought reaffirmation of its accreditation, CCE concluded NUHS was not fully compliant with all accreditation standards but, nonetheless, reaffirmed its accreditation. At the same time, however, CCE notified NUHS it was placing its program on probation.[1] After NUHS's appeal of the probation decision was denied by the CCE appeals panel, NUHS filed a complaint in federal court raising common law due process claims and seeking injunctive and declaratory relief. The district court denied relief and this appeal followed. Both parties proceed under

---

[1] On January 29, 2019, CCE removed the sanction of probation based on its review and evaluation of the progress NUHS made in the areas previously identified as noncompliant. Accordingly, this appeal is moot as to all of NUHS's claims for injunctive relief from the imposition of probation.

the assumption that NUHS can bring a common law due process claim in this circuit and that the arbitrary and capricious standard is applicable to such a claim. *See Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, 781 F.3d 161, 172 (4th Cir. 2015) (holding a common law due process claim against an accrediting agency is cognizable and involves an inquiry into "whether the accrediting body's internal rules provided a fair and impartial procedure and whether it followed its rules in reaching its decision" (internal quotation marks and alternations omitted)). We express no opinion on the validity of common law due process claims challenging decisions relating to accreditation.  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm in part and dismiss in part.

1.    To maintain recognition by the Secretary of Education, an accrediting agency must comply with 20 U.S.C. § 1099b. *See also* 34 C.F.R. Part 602.  The statute, *inter alia*, requires the agency to consistently and evenhandedly apply and enforce standards of accreditation and afford due process to the programs it accredits. 20 U.S.C. § 1099b(a)(4)(A), (a)(6).  Consistent with the statute, CCE has adopted and published accreditation standards (the "*Standards*").  NUHS does not dispute that it was not in compliance with *Standards* §§ 2.A and 2.H at the time CCE reaffirmed its accreditation.  Instead, it asserts CCE violated its due process rights by imposing the sanction of probation because the *Standards* do not permit CCE to grant reaffirmation of accredited status and, on the same record, impose probation.

NUHS has not identified any *Standard* specifically prohibiting CCE from placing a program on probation at the same time it reaffirms accreditation.  To the contrary, CCE *Standard* § 1, III.A. provides a list of accreditation actions

that CCE may take "at any time." Among other things, this list includes reaffirming accreditation and imposing probation. Further, *Standard* § 1, V. permits CCE to take any of the following actions against a program that is not in compliance with all the *Standards*: (1) issue a warning, (2) place the program on probation, or (3) require the program to show cause why its accreditation should not be revoked. NUHS's position is inconsistent with *Standard* § 1, V. because it would foreclose CCE from taking any action against a noncompliant program short of revocation of accreditation.

Because the *Standards* contemplate situations in which a program can remain accredited even if it is not fully in compliance with all accreditation standards, CCE did not act arbitrarily and capriciously when it simultaneously reaffirmed NUHS's accreditation and imposed probation.

2. An accrediting agency must also establish and apply review procedures that comply with due process. 20 U.S.C. § 1099b(a)(6)(A). This includes providing "written specification of any deficiencies identified at the institution or program examined"; providing "sufficient opportunity for a written response by an institution or program regarding any deficiencies identified by the agency, to be considered by the agency within a timeframe determined by the agency, and before any adverse action is taken"; and notifying a program "in writing of any adverse accrediting action or an action to place the institution or program on probation or show cause." 34 C.F.R. § 602.25(c)–(e). According to NUHS, CCE imposed the sanction of probation without first providing written notification of any deficiencies and without providing the opportunity to submit a written response. NUHS alleges it did not receive written notification from

CCE "prior to CCE's February 2, 2018 letter notifying NUHS that CCE was placing NUHS on Probation."

CCE *Standard* § 1, V.B. states that "[p]robation is an action reflecting the conclusion of [CCE] that a program is in significant noncompliance with accreditation standards or policy requirements." NUHS's position improperly conflates CCE's actions with its conclusions. Although CCE concluded on February 2, 2018, that NUHS was not in compliance with the *Standards*, it did not take any action against NUHS on that date. Instead, in conformity with CCE Policy 8, NUHS's status "remain[ed] unchanged" until the CCE appeal process ended.

The CCE site team identified deficiencies[2] in NUHS's compliance with the *Standards* and NUHS was given the opportunity to respond in writing to the site team's final report. CCE and NUHS representatives also discussed the areas of concern identified by the site team at a status review meeting. Additionally, NUHS was notified in writing of CCE's conclusion that probation was appropriate and was given the opportunity to appeal that proposed action before it became final. The record shows that CCE adequately apprised NUHS of its concerns regarding noncompliance with Policy 56, and *Standards* §§ 2.A and 2.H, and provided NUHS with multiple avenues to advocate for its position. Thus, CCE's decision to impose probation was not arbitrary and capricious and did not violate CCE's obligation to apply

---

[2] "Concern" is defined in the final site team report as "a conclusion of the CCE Site Team that there is a deficiency, major to minor, in meeting the *Standards* to which the comment is connected." For due process purposes, it is irrelevant that the CCE site team is not authorized to make a final determination that a program is not in compliance with the *Standards*.

review procedures consistent with due process.  20 U.S.C. § 1099b(a)(6)(A).

3.  NUHS's final claim involves CCE Policy 56 which requires a program to "disclose up-to-date results of student performance on national board examinations and completion rates on the program website."  Relevant to the issue raised by NUHS, a program must "post annually the overall weighted average of the four (4) most recent years' NBCE Parts I, II, III, and IV Exam success rates."  Policy 56 further provides that "[t]he overall weighted average of the four (4) most recent years' NBCE Parts I, II, III, and IV Exam success rates must not be less than 80%."  One of NUHS's campuses is located in Illinois and until 2016, Illinois did not require chiropractic licensure applicants to take Part IV of the NBCE exam.  In its complaint, NUHS alleged that CCE failed to apply Policy 56 with an "even hand" because it required NUHS to report any NUHS graduate who did not take Part IV of the NBCE exam as having failed the exam.  CCE based its decision to impose the sanction of probation, in part, on NUHS's failure to meet the Policy 56 benchmark of eighty percent.

On January 29, 2019, CCE removed the sanction of probation based on NUHS's noncompliance with CCE *Standards* §§ 2.A and 2.H, but retained the concern regarding Policy 56 and required further reporting.  On July 25, 2019, however, CCE informed NUHS "that its current 4-year overall weighted average NBCE success rate (80%) meets the threshold established in CCE Policy 56."  Based on NUHS's compliance with Policy 56, CCE determined no further action or reporting was required by NUHS.

Effective July 1, 2016, the Illinois Medical Practice Act of 1987 (as amended) added Part IV of the NBCE exam to the licensure requirements for chiropractic physicians.  *See*

68 Ill. Admin. Code § 1285.60(b)(1).  NUHS concedes in its opening appellate brief that "NBCE exam results preceding the change in Illinois' licensure requirement" only remained a part of the Policy 56 calculation until July 1, 2020. Because NUHS has no further reporting obligations with respect to NBCE exams administered before the change in Illinois law, its appeal from the denial of injunctive relief prohibiting CCE from enforcing Policy 56 is moot.  *See San Lazaro Ass'n, Inc. v. Connell*, 286 F.3d 1088, 1095–96 (9th Cir. 2002).  NUHS's appeal from the denial of a declaratory judgment that Policy 56 cannot be applied to NUHS without violating common law due process principles is also moot. *See Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005).

The judgment of the district court is **AFFIRMED** as to the court's conclusion that CCE did not violate NUHS's common law due process rights (1) by imposing a sanction of probation while contemporaneously reaffirming NUHS's accreditation status and (2) by providing NUHS with notice and opportunity to respond to identified deficiencies in the manner described.    The remainder of the appeal is **DISMISSED** as moot.