**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAN DIEGO COUNTY CREDIT UNION, *Plaintiff-Appellee/ Cross-Appellant,* v. CITIZENS EQUITY FIRST CREDIT UNION, *Defendant-Appellant/ Cross-Appellee.* | Nos. 21-55642 21-55662 21-56095 21-56389 D.C. No. 3:18-cv-00967-GPC-MSB ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted December 9, 2022
Pasadena, California

Filed February 10, 2023
Amended April 21, 2023

Before: Carlos T. Bea, Sandra S. Ikuta, and Morgan
Christen, Circuit Judges.

Order;
Opinion by Judge Bea

# SUMMARY[*]

## Trademark / Article III Standing

The panel filed (1) an order amending its opinion, denying a petition for panel rehearing, and denying on behalf of the court a petition for rehearing en banc; and (2) an amended opinion affirming in part and vacating in part the district court's judgment and award of attorneys' fees in favor of the plaintiff and remanding in a trademark case.

Defendant Citizens Equity First Credit Union (CEFCU) petitioned the Trademark Trial and Appeal Board (TTAB) to cancel a trademark registration belonging to plaintiff San Diego County Credit Union (SDCCU). SDCCU procured a stay to the TTAB proceedings by filing an action seeking declaratory relief to establish that it was not infringing either of CEFCU's registered and common-law marks and to establish that those marks were invalid. The district court granted SDCCU's motion for summary judgment on non-infringement. After a bench trial, the district court also held that CEFCU's common-law mark was invalid and awarded SDCCU attorneys' fees.

Vacating in part and remanding, the panel held that SDCCU had no personal stake in seeking to invalidate CEFCU's common-law mark because the district court had already granted summary judgment in favor of SDCCU, which established that SDCCU was not infringing that mark. Hence, there was no longer any reasonable basis for

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

SDCCU to apprehend a trademark infringement suit from CEFCU. After it granted summary judgment in favor of SDCCU, the district court was not resolving an actual "case" or "controversy" regarding the validity of CEFCU's common-law mark; thus, it lacked Article III jurisdiction to proceed to trial on that issue. The panel therefore vacated the district court's judgment and its award of attorneys' fees, which was based, in part, on the merits of the invalidity claim over which the district court lacked Article III jurisdiction.

In light of *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), and *Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013), the panel confirmed the ongoing vitality of precedent applying what the parties labeled a "reasonable apprehension" test to determine whether a controversy exists in a declaratory judgment action regarding trademark infringement. Under this test, a plaintiff has standing to seek declaratory relief of non-infringement if he demonstrates "a real and reasonable apprehension that he will be subject to liability" if he continues with his course of conduct. The panel held that a live controversy existed at the pleading stage, and CEFCU did not meet its burden of proving that the case was moot at the summary judgment stage. The district court did not, however, possess Article III jurisdiction to proceed to trial on SDCCU's invalidity claim.

The panel held that the district court correctly exercised personal jurisdiction over CEFCU regarding SDCCU's non-infringement claims, which sought declaratory relief that SDCCU was not infringing CEFCU's registered mark or common-law mark.

The panel affirmed the district court's dismissal without prejudice of CEFCU's counterclaim for cancellation of SDCCU's trademark registration.

## COUNSEL

James W. Dabney (argued), Emma L. Baratta, and Michael M. Polka, Hughes Hubbard & Reed LLP, New York, New York; Steven J. Cologne, Higgs Fletcher & Mack, LLP, San Diego, California; for Defendant-Appellant.

Martin R. Bader (argued), Stephen Sandor Korniczky, Lisa M. Martens, Jesse A. Salen, and Karin Dougan Vogel, Sheppard Mullin Richter & Hampton LLP, San Diego, California; Todd E. Lundell, Sheppard Mullin Richter & Hampton LLP, Costa Mesa, California; James V. Fazio III, San Diego IP Law Group, San Diego, California; for Plaintiff-Appellee.

## ORDER

The Opinion filed on February 10, 2023, and published at 60 F.4th 481 (9th Cir. 2023), is amended by the opinion filed concurrently with this order.

The panel unanimously voted to deny the petition for panel rehearing. Judges Ikuta and Christen voted to deny the petition for rehearing en banc and Judge Bea so recommends. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. Accordingly, Plaintiff-Appellee/Cross-Appellant San Diego County Credit Union ("SDCCU")'s petition for panel

rehearing and petition for rehearing en banc filed February 24, 2023, are **DENIED**. SDCCU's motion for leave to file a reply brief filed April 10, 2023, is **DENIED** as moot.

No further petitions for rehearing or rehearing en banc will be considered.

It is so **ORDERED**.

## OPINION

BEA, Circuit Judge:

After a party obtains declaratory relief which decrees that it is not infringing a trademark, does it retain Article III standing to invalidate that mark? That is the central question presented in these appeals, and, under the circumstances presented here, we answer it: No.

Defendant-appellant and cross-appellee Citizens Equity First Credit Union (CEFCU) began this dispute by petitioning the Trademark Trial and Appeal Board (TTAB) to cancel a trademark registration belonging to plaintiff-appellee and cross-appellant San Diego County Credit Union (SDCCU). CEFCU claimed that SDCCU's registration covered a mark that is confusingly similar to both CEFCU's registered mark and its alleged common-law mark. SDCCU procured a stay to the TTAB proceedings by filing the instant declaratory judgment action. SDCCU persuaded the district court that, during the course of the TTAB proceedings, it had become apprehensive that CEFCU would sue SDCCU for trademark infringement. SDCCU sought declaratory relief to establish it was not infringing either of CEFCU's marks *and* to establish that

those marks are invalid. The district court granted SDCCU's motion for summary judgment on non-infringement. After a bench trial, the district court *also* held that CEFCU's common-law mark is invalid and awarded SDCCU attorneys' fees.

We hold that SDCCU had no personal stake in seeking to invalidate CEFCU's common-law mark because the district court had already granted summary judgment in favor of SDCCU, which established that SDCCU was not infringing that mark. Hence, there was no longer any reasonable basis for SDCCU to apprehend a trademark infringement suit from CEFCU. After it granted summary judgment in favor of SDCCU, the district court was not resolving an actual "case" or "controversy" regarding the validity of CEFCU's common-law mark; thus, it lacked Article III jurisdiction to proceed to trial on that issue. We therefore vacate its judgment and its award of attorneys' fees. Of the remaining issues that are not obviated by our holding on Article III jurisdiction, we affirm. Thus, we affirm in part, vacate in part, and remand.

## I.

This is a trademark dispute between two credit unions with largely geographically remote membership counties.

CEFCU's principal place of business is in Peoria, Illinois. In 2008, it acquired Valley Credit Union located in the Bay Area of Northern California. Although CEFCU has members residing in all 50 states, it generally requires that its members have ties to Illinois or the following California counties: Alameda, Contra Costa, or Santa Clara. In 2011, CEFCU registered its trademark, "CEFCU. NOT A BANK. BETTER.," with the United States Patent and Trademark Office. CEFCU also claims to own a common-law

trademark that is nearly identical to its registered mark, but omits its house mark. Its claimed common-law mark is "NOT A BANK. BETTER."

SDCCU's principal place of business is in San Diego, California. Each of SDCCU's locations are located in San Diego, Riverside, or Orange County. SDCCU focuses its marketing on these counties and over 95 percent of its members are resident Californians. In 2014, SDCCU obtained a registration for "IT'S NOT BIG BANK BANKING. IT'S BETTER."

CEFCU petitioned the TTAB to cancel SDCCU's registration in 2017, alleging that CEFCU had used its registered mark in commerce prior to SDCCU's registration. CEFCU alleged the parties provide "identical" services to "identical" types of customers and use their respective marks in "identical . . . online advertising media." It claimed that SDCCU's mark "so resembles" CEFCU's registered mark "as to be likely, when used in connection with the services of [SDCCU], to cause confusion, or to cause mistake, or to deceive within the meaning of [the] Trademark Act §2 (d), 15 U.S.C. § 1052(d)." Finally, CEFCU alleged it "believes it will be damaged by continued registration of [SDCCU's mark] because such registration gives false color to [SDCCU]'s right to use [SDCCU's mark] and encourages [SDCCU]'s misleading and deceptive use of [SDCCU's mark] in derogation of [CEFCU]'s prior and superior rights in [CEFCU]'s registered mark."

In the TTAB proceedings, SDCCU deposed Jennifer Flexer, CEFCU's marketing director, and Susan Portscheller, a former vice president of CEFCU. Flexer testified that CEFCU petitioned to cancel SDCCU's registration because she "became aware that SDCCU's

billboard was in the marketplace [in San Diego]. As a marketing professional [she] had concerns with the content of the advertisement" because it seemed "very similar" to CEFCU's common-law mark. Portscheller testified as CEFCU's corporate designee. *See* Fed. R. Civ. P. 30(b)(6) (allowing for depositions of corporate entities through a designee); 37 C.F.R § 2.116(a) (making the federal rules of civil procedure generally applicable in TTAB proceedings). Portscheller testified that CEFCU sought to build awareness of its brand in a five-mile radius of its Bay Area branches and seeks to "build awareness outside that radius in California." She further testified that CEFCU has "members throughout California, and many of them are in Southern California." Although she was not aware of any actual customer confusion, she believed it was "just a question of time" because CEFCU had only just begun marketing in California. She thought that SDCCU's mark constituted "trademark infringement."

CEFCU moved to amend its TTAB petition, alleging an additional reason that SDCCU's registration should be cancelled—CEFCU's prior use of its common-law mark.

While the motion to amend the TTAB petition was pending, SDCCU filed the instant suit in the United States District Court for the Southern District of California. Counts one through four of SDCCU's complaint sought declaratory relief under the Declaratory Judgment Act[1] stating that: (1) SDCCU is not infringing CEFCU's registered mark; (2) SDCCU is not infringing CEFCU's common-law mark; (3) CEFCU's registered mark is invalid; and (4) CEFCU's common-law mark is invalid. Count five alleged that

---

[1] *See* 28 U.S.C. § 2201.

CEFCU falsely or fraudulently registered its trademark. *See* 15 U.S.C. § 1120. At SDCCU's request, the TTAB stayed the cancellation proceedings pending resolution of this case.

Before answering the complaint, CEFCU filed two motions to dismiss.[2]

First, it moved to dismiss for lack of personal jurisdiction. In support, CEFCU filed more than 200 pages of exhibits, including the cancellation petition pleadings, documents produced during discovery, deposition transcripts, a consumer survey, and CEFCU's motion to amend its cancellation petition. SDCCU submitted 15 exhibits in opposition. In its order, the district court acknowledged that it was resolving the motion "on written materials rather than an evidentiary hearing" and, consequently, required SDCCU to make only "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1095 (S.D. Cal. 2018). Applying the prima facie standard, the district court held that specific personal jurisdiction existed in California over CEFCU because: (1) CEFCU purchased Valley Credit Union in the Bay Area and marketed its services there using its trademarks; (2) CEFCU challenged the registration of SDCCU's mark, which was used solely in California, and because SDCCU alleged that CEFCU's initiation of the cancellation proceedings was prompted by Flexer's observation of SDCCU's billboard in San Diego; and (3) CEFCU's acts would "likely cause harm to SDCCU in

---

[2] CEFCU filed a third pre-answer motion, and it filed many other motions throughout the proceedings below. We discuss only those relevant to our analysis.

California." *Id.* at 1101. Based on this analysis, the district court found specific personal jurisdiction had been proven and thus denied CEFCU's motion.

CEFCU then moved to dismiss the first four counts for lack of Article III subject matter jurisdiction. CEFCU acknowledged it was making a "factual attack on jurisdiction," and asked the district court to consider the hundreds of documents it had submitted in its prior motion to dismiss for lack of personal jurisdiction. Based on these documents, CEFCU argued that Article III jurisdiction did not exist because SDCCU could not have reasonably apprehended a trademark infringement lawsuit. Applying *Chesebrough-Pond's, Inc. v. Faberge, Inc. ("Chesebrough")*, 666 F.2d 393 (9th Cir. 1982), the district court held that a case or controversy existed because CEFCU's petition in the TTAB alleged "the elements of a cause of action for trademark infringement," which reasonably put SDCCU in fear of an infringement suit. *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147, 1155 (S.D. Cal. 2018). The district court denied CEFCU's motion.

Its motions to dismiss for lack of personal and subject matter jurisdiction denied, CEFCU answered the complaint. It generally denied the allegations of SDCCU's complaint, including that it had any intent to sue for infringement. CEFCU also asserted a counterclaim which mirrored the claim it originally asserted in the TTAB—cancellation of SDCCU's registration.

New depositions were taken. This time, Flexer was CEFCU's corporate designee. *See* Fed. R. Civ. P. 30(b)(6). The thrust of her testimony was that CEFCU did not intend to sue SDCCU for trademark infringement. She clarified that

CEFCU did not take issue with SDCCU's use of its mark "to date," but that she would "not speculate with regard to the future." If future harm resulted from SDCCU's use of its mark, she "would seek counsel at that time."

In view of the lack of evidence regarding infringement, SDCCU requested that CEFCU stipulate that SDCCU had not infringed CEFCU's marks. But CEFCU declined.

The district court then granted CEFCU's motion for summary judgment on SDCCU's fraudulent registration claim (count five). At the same time, it granted SDCCU's unopposed motion for summary judgment on its non-infringement claims. The district court understood that CEFCU did "not dispute that SDCCU's use of its mark does not infringe CEFCU's [m]arks." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18CV967, 2020 WL 5797827, at *3 (S.D. Cal. Sept. 29, 2020). Instead, CEFCU had sought dismissal of SDCCU's claims, contending that SDCCU could not reasonably apprehend an infringement suit on the current record. In rejecting CEFCU's argument, the district court relied on its earlier rulings and reasoned that, although CEFCU had not presented its argument "as a mootness argument, in essence, CEFCU is arguing that the declaratory relief claims have become moot." Citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013), the district court determined that CEFCU did not meet its "burden to demonstrate that circumstances have changed since the initiation of this lawsuit to moot the claims." *San Diego Cnty. Credit Union*, 2020 WL 5797827 at *3–5.

CEFCU did not raise its personal jurisdiction defense at the summary judgment phase. It did not seek an interlocutory appeal of the order which granted SDCCU summary

judgment. Nor does it, in this appeal, challenge this order on the merits.

Having resolved counts one, two, and five, the district court *sua sponte* dismissed without prejudice CEFCU's counterclaim seeking cancellation of SDCCU's registration because the district court action no longer "involve[ed] a registered mark" under the meaning of 15 U.S.C. § 1119. The parties agreed to dismiss count three. The only issue that remained after the summary judgment phase was count four—SDCCU's count seeking declaratory relief to invalidate CEFCU's common-law mark.

CEFCU again moved to dismiss for lack of personal and subject matter jurisdiction, both of which motions the district court denied. After holding a bench trial, the district court determined that CEFCU's common-law mark is invalid, entered a final judgment, and granted SDCCU's motion for attorneys' fees.

## II.

The parties raise a bevy of issues on appeal. To assist in our explanation and analysis of those issues, it is helpful to establish some short-hand terminology.

We will refer to counts one and two of SDCCU's complaint—which sought declaratory relief that SDCCU is not infringing CEFCU's registered mark or common-law mark—as SDCCU's "non-infringement claims." And we will refer to count four, which sought a declaration that CEFCU's common-law mark is invalid, as SDCCU's "invalidity claim."

With that terminology in mind, we turn to the four issues that we decide in this appeal. First, we conclude that the district court lacked Article III jurisdiction to invalidate

CEFCU's common-law mark following its grant of summary judgment in favor of SDCCU on its non-infringement claims. Second, we vacate the district court's award of attorneys' fees because its decision to grant that award was based, in part, on the merits of the invalidity claim over which it lacked Article III jurisdiction. Third, we hold that the district court correctly exercised personal jurisdiction over CEFCU regarding SDCCU's non-infringement claims. Fourth, we affirm the district court's dismissal of CEFCU's counterclaim.[3]

A.

CEFCU disputes the existence of a case or controversy sufficient to satisfy Article III at the pleading, summary judgment, and trial phases of the proceedings below. The existence of a case or controversy is a question of law we review de novo. *Ridgeway v. Walmart Inc*, 946 F.3d 1066, 1075 (9th Cir. 2020).

The judicial power granted to us by the Constitution is limited to resolving actual cases or controversies. *E.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016); U.S. Const. Art. III, § 2. That limitation is "not relaxed in the declaratory judgment context." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc). The Declaratory Judgment Act does not confer jurisdiction. 28 U.S.C. §§ 2201–02; *Allen v. Milas*, 896 F.3d 1094, 1099 (9th Cir. 2018). The party seeking declaratory relief must demonstrate the three elements that comprise the "irreducible constitutional minimum of standing": (1) an "injury in fact" that is "concrete and particularized" and

---

[3] CEFCU raises numerous issues regarding the trial. Our holding on Article III jurisdiction obviates review those issues.

"actual or imminent, not conjectural or hypothetical" that is (2) "causal[ly] connect[ed]" and "fairly traceable" to "the conduct complained of" and "not the result of the independent action of some third party not before the court" and (3) "likely as opposed to merely speculative," such that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). To have such standing, the plaintiff must have a "personal stake," *Gator.com Corp.*, 398 F.3d at 1130, in the outcome of "each claim . . . and for each form of relief that is sought," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, (2008) (cleaned up), which "exist[s] not only at the time the complaint is filed, but through all stages of the litigation." *Already*, 568 U.S. at 90–91 (quotations omitted). These are the principles that primarily animate the parties' dispute before us.

But before analyzing the parties' arguments regarding Article III jurisdiction, we first summarize our precedent applying these principles to declaratory judgment actions in the trademark infringement context and confirm our precedent's ongoing vitality in light of two intervening Supreme Court cases, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), and *Clapper v. Amnesty International*, 568 U.S. 398 (2013).

We have applied what the parties label the "reasonable apprehension" test to determine whether a controversy exists in a declaratory judgment action regarding trademark infringement. *See Societe de Conditionnement en Aluminium v. Hunter Eng'g Co. ("Societe")*, 655 F.2d 938, 944–45 (9th Cir. 1981); *Chesebrough,* 666 F.2d 393. Under our precedent, a plaintiff has standing to seek declaratory relief of non-infringement if he demonstrates "a real and reasonable apprehension that he will be subject to liability"

if he continues with his course of conduct. *Societe*, 655 F.2d at 944–45; *Chesebrough*, 666 F.2d at 396. Such an apprehension can exist even absent an explicit threat to sue. *Chesebrough*, 666 F.2d 393; *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1158 (9th Cir. 2007).

Below, the district court expressed some hesitation regarding the validity of our precedent after *MedImmune*. *See San Diego Cnty. Credit Union*, 344 F. Supp. 3d at 1154 n.3. In *MedImmune*, the plaintiff manufactured a drug called Synagis. 549 U.S. at 121. Plaintiff and defendant were parties to a license that covered one of defendant's then-pending patents. *Id.* After the application for that patent was granted, defendant sent plaintiff a letter claiming that Synagis was covered by the newly-granted patent and that plaintiff should begin paying royalties. *Id.* at 121–22. Plaintiff believed the letter was a threat to sue, paid the royalties "under protest," and filed an action seeking declaratory relief that no infringement was occurring and no royalties were due. *Id.* at 122. Defendant argued, and both lower courts agreed, that there was no case or controversy because plaintiff's decision to pay the royalties "obliterate[d] any reasonable apprehension" that plaintiff would be sued for infringement. *Id*. (citation omitted).

In reversing, the Supreme Court explained that "[t]he plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *Id.* at 128–30. "The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is a dilemma that . . . was the very purpose of the Declaratory Judgment Act to ameliorate." *Id.* (internal quotation marks omitted). Notably, the Supreme Court rejected the Federal Circuit's articulation of the

reasonable apprehension test. *Id.* at 132 n.11. Instead, it applied language from *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941), to determine the standing dispute before it. *Id.* at 127.**[4]**

We conclude that our precedent is consistent with *MedImmune*. Although *MedImmune* may have abrogated the *Federal Circuit*'s version of the reasonable apprehension test, *see SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007), it did not abrogate *our* version. As we explained in *Rhoades*, the Federal Circuit's version of the reasonable apprehension test created a "burden [that was] heavier than what we require[d]" because the Federal Circuit required "an explicit threat." 504 F.3d at 1157 n.4. By contrast, the *Maryland Casualty* standard applied in *MedImmune*, 549 U.S. at 127, is precisely what we relied upon in framing *our* version of the reasonable apprehension test. *Societe*, 655 F.2d at 942.

Indeed, *MedImmune* simply reaffirms two principles we had already articulated. First, it confirms that "concrete threats" of a trademark infringement suit "are not required" to create a live controversy for purposes of providing standing in a declaratory relief action. *Rhoades*, 504 F.3d at 1158. Second, *MedImmune* underscores the importance of our examination of "the likely impact on competition" created by a defendant's actions, along with "the risks imposed upon the plaintiff." *Chesebrough*, 666 F.2d at 396.

---

[4] Namely, *MedImmune* reiterated: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. at 127 (quoting *Maryland Cas.*, 312 U.S. at 273).

Even without expressly threatening to sue, a defendant can harm a plaintiff by engaging in conduct that compels the plaintiff to "chill[]" its use of its mark. *Id.* at 397. Whether or not we call this latter harm a "reasonable apprehension of suit" is beside the point.**[5]** The point is that *Societe*, *Chesebrough*, and *Rhoades* are consistent with *MedImmune*.

We also conclude that our precedent survived *Clapper*. CEFCU argues otherwise. It contends that our precedent is outdated because it uses the "pre-*Clapper* phrase, 'reasonable apprehension.'" "Post-*Clapper*," CEFCU argues, "future legal liability must be 'certainly impending.'" To begin with, CEFCU should have raised this argument in its opening brief, not in a *footnote* to its *reply* brief. *See Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010).

---

[5] The Federal Circuit explained that *MedImmune* "did not completely do away with the relevance of a reasonable apprehension of suit." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008). According to *Prasco*, "proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Id.*

We agree in substance. We agree that a reasonable apprehension of infringement liability remains the primary focus of the inquiry after *MedImmune*. But in our view, a plaintiff who thinks himself forced to engage in or refrain from engaging in certain conduct to avoid being sued simply *evinces* a reasonable apprehension of suit in a manner different from what the Federal Circuit had previously recognized. Take the plaintiff in *MedImmune*, for example. By paying the royalties under protest, the plaintiff voluntarily refrained from fulfilling a condition precedent to the defendant's purported ability to file an infringement lawsuit. The plaintiff's fear of infringement liability remained the basis for jurisdiction even in that example.

Regardless, *Clapper* does not require plaintiffs, for purposes of establishing standing, "to demonstrate that it is literally certain that the harms they identify will come about." 568 U.S. at 412 n. 5. Rather, *Clapper* recognized that standing may exist when there is a "'substantial risk' that the harm will occur," *id.*, and subsequent Supreme Court cases have followed suit. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if the threatened injury is certainly impending, *or* there is a substantial risk that the harm will occur." (emphasis added) (cleaned up)). We have also used similar language and long held that a threatened injury may constitute an injury in fact where there is "a credible threat of harm" in the future. *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010). This language is perfectly consistent with our "reasonable apprehension" standard.

Moreover, *Clapper* emphasized the separation-of-powers considerations inherent in a national security case. 568 U.S. at 407–08. It applied an "especially rigorous" analysis to avoid judicial usurpation of the powers of the political branches. *Id.* at 408. We reject CEFCU's unexplained insistence that we transform the "certainly impending" language in *Clapper* into a "precise test" by which we must analyze the existence of Article III jurisdiction in any and all cases, regardless of their contexts. *See Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 297 (1979). In the context of declaratory judgment actions regarding trademark infringement, we will continue to apply the principles articulated in *Societe*, *Chesebrough*, and *Rhoades*.

Having clarified the applicable standard, we now turn to the question whether subject matter jurisdiction existed at

the pleading, summary-judgment, and trial stages of the proceedings below.

1.

CEFCU argues that SDCCU did not reasonably apprehend an infringement suit at the pleading stage because of the parties' geographic separation. CEFCU characterizes its TTAB petition as challenging only SDCCU's claim of right to use its mark "nationwide." SDCCU responds that the TTAB "petition alone was sufficient for SDCCU to infer a threat of an infringement action" because it alleged a likelihood of confusion. SDCCU also argues that CEFCU's conduct during the cancellation proceedings reaffirmed the reasonableness of its apprehension.

We conclude that a justiciable controversy existed at the pleading stage, but not solely because of the allegations in CEFCU's TTAB petition. SDCCU makes much ado about the fact that CEFCU alleged a likelihood of confusion resulting from SDCCU's "*use*" of its mark. In urging us to focus on CEFCU's use of the word "use" in its TTAB petition, SDCCU reads far too broadly our decision in *Chesebrough*.

In that case, plaintiff Chesebrough applied for registration of its "Match" mark. *Chesebrough*, 666 F.2d at 394–95. While Chesebrough's application was pending, Faberge—which owned a registration for its "Macho" mark in the same industry—sent Chesebrough a letter "stating that it believed the two marks to be 'confusingly similar' and that unless Chesebrough withdrew its application, Faberge would file opposition thereto." *Id.* at 395. Chesebrough refused to withdraw and Faberge filed opposition. *Id.* Three years later, Chesebrough sought declaratory relief of non-infringement in federal court. *Id.* The district court found a

live controversy and granted summary judgment in favor of Chesebrough, holding that there was no likelihood of confusion between the parties' marks. *Id.*

We affirmed. In assessing the reasonableness of plaintiff's apprehension, we explained that the court in *Societe* "focused upon the position and perceptions of the plaintiff, declining to identify specific acts or intentions of the defendant that would automatically constitute a threat of litigation" in determining the circumstances in which a "trademark or patent dispute ripened into an actual controversy." *Id.* We explained, "[t]he acts of the defendant [are] instead to be examined in view of their likely impact on competition and the risks imposed upon the plaintiff." *Id.* Despite our admonition that "simple opposition proceeding[s]" generally do not create a reasonable apprehension of suit, and despite our recognition that likelihood of confusion is "relevant to both registration and infringement proceedings," we held in *Chesebrough* that Faberge's letter created a reasonable apprehension of suit because it alleged a likelihood of confusion and thereby "stat[ed] a prima facie case for trademark infringement." *Id.* at 396–97. We identified two additional facts that "bolster[ed]" the reasonableness of Chesebrough's apprehension. *Id.* at 397. First, after Chesebrough filed its complaint, Faberge asserted an infringement counterclaim. *Id.* Second, Chesebrough's use of its mark had been "chill[ed]" by the opposition proceedings. *Id.*[6]

---

[6] The opinion does not explain how, exactly, Chesebrough proved to the district court that Faberge's actions had caused Chesebrough to "chill[]" the use of its mark out of a fear of infringement liability. But because the district court analyzed jurisdiction at the summary judgment phase,

In arguing that CEFCU's TTAB petition created a live controversy, SDCCU interprets *Chesebrough* as holding that the mere allegation of a likelihood of confusion—regardless of context—can create a justiciable controversy. 666 F.2d at 396–97. That broad reading of *Chesebrough* is inconsistent with *Chesebrough*'s own limiting principle that "a simple opposition proceeding in the Patent and Trademark Office generally will not raise a real and reasonable apprehension of suit," *id.* at 396, because alleging a likelihood of confusion is "[b]y far the most common ground of [a] petition to cancel." J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 20:7 (5th ed. 2019) [hereinafter *McCarthy*].

If, as SDCCU contends, the most common ground for a cancellation petition creates a justiciable controversy, then little weight can be given to *Chesebrough*'s only limiting principle. Diminishing that limiting principle would impair the "[t]he traditional rule," which "is that if the only basis for a Declaratory Judgment is the threat or actual filing of an opposition or cancellation proceeding against plaintiff's trademark registration in the Patent and Trademark Office, then this is not, by itself, sufficient to create an 'actual controversy' over trademark infringement." 6 *McCarthy* § 32:52. Accepting SDCCU's position would allow litigants to "file suit in federal court solely for cancellation of a registration," a result that "undercut[s] and short-circuit[s] the power of the Trademark Board to consider such cases." 6 *McCarthy* § 32:54.

---

*Chesebrough*, 666 F.2d at 395, we assume that Chesebrough submitted some form of evidence to that effect.

*Chesebrough* itself rejects such a result. We emphasized that jurisdiction does not depend on whether a party used magic words in a TTAB petition—we "declin[ed] to identify specific acts or intentions of the defendant that would automatically constitute a threat of litigation." *Chesebrough*, 666 F.2d at 396; *see also Rhoades*, 504 F.3d at 1157. Instead, the reasonable apprehension test is "oriented to the reasonable perceptions of the plaintiff," *Chesebrough*, 666 F.2d at 396, based on "all the circumstances" known to it. *Societe*, 655 F.2d at 942 (quoting *Maryland Cas.*, 312 U.S. at 273); *MedImmune*, 549 U.S. at 127 (same). In short, we must look to the context in which the allegation was made.

CEFCU argues that the relevant context here includes the "geographic separation" between the areas in which the parties use their marks. This geographic separation is significant—SDCCU's northernmost credit union branch is in Orange County, while CEFCU's southernmost membership county is Santa Clara. That leaves Los Angeles, Ventura, Santa Barbara, San Luis Obispo, and Monterey counties to separate the parties' territories. That geographic separation would have colored SDCCU's understanding of CEFCU's likelihood-of-confusion allegation at that time. SDCCU should have understood CEFCU's likelihood-of-confusion allegation merely as a necessary basis to support CEFCU's cancellation petition—statutory standing. 15 U.S.C. § 1064; *see also infra* note 7. A reasonable person in SDCCU's position would have known that an infringement suit was unlikely. *Compare Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1568–69 (Fed. Cir. 1983) (noting that "geographical distance between the present locations of the respective businesses of the two parties has little relevance in" a cancellation petition alleging a likelihood of confusion) *with Fairway Foods, Inc. v.*

*Fairway Markets, Inc.*, 227 F.2d 193, 196 (9th Cir. 1955) (holding that liability for trademark infringement could not lie because the geographically remote use of the parties' marks foreclosed plaintiff's ability to prove a likelihood of confusion). Based on this context, we hold, consistent with the limiting principle in *Chesebrough*, that CEFCU's TTAB petition—on its own—was insufficient to create a live controversy. But the analysis does not end there.

During discovery in the TTAB proceedings, SDCCU uncovered information that gave it a reasonable apprehension of being sued by CEFCU.[7] CEFCU's Rule

---

[7] SDCCU misquotes documents from the TTAB proceedings to argue that CEFCU attempted to prove "*damages* to CEFCU by reason of" SDCCU's use of its mark. (emphasis added). The portion of the record quoted by SDCCU consists of an attorney declaration explaining CEFCU's submission of "[d]ocuments evidencing the potential for *damage* to CEFCU by reason of" SDCCU's use of the SDCCU mark. (emphasis added). The distinction between "damages" and "damage" is important. *See* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 44 (2012) ("The word *damage* (harm to property) is quite distinct in meaning from *damages* (money awarded to a victorious litigant)."). Allegations of "damages" certainly could lead a party to apprehend *monetary* damages resulting from infringement, much like the damages sought by the defendant in *Rhoades*, 504 F.3d at 1158.

But any such apprehension was unreasonable in the context of the then-ongoing cancellation proceedings. CEFCU was required to plead and prove—as a matter of statutory standing—that it was "likely to be damaged" by SDCCU's registration. 3 *McCarthy* at § 20.41 ("To successfully prosecute a petition for cancellation, petitioner must plead and prove . . . that it has standing to petition to cancel in that it is *likely to be damaged* by the registration." (emphasis added)); 15 U.S.C. § 1064 ("A petition to cancel a registration of a mark . . . may . . . be filed . . . *by any person who believes that he is or will be damaged* . . . by the registration of a mark." (emphasis added)). It would make no sense that CEFCU was trying to prove monetary damages in the TTAB

30(b)(6) designee, Portscheller, told SDCCU's attorney that she believed SDCCU's mark constituted "trademark infringement" of CEFCU's marks, and that she believed actual customer confusion was only a "question of time" because CEFCU was attempting to increase brand awareness outside of the Bay Area and, indeed, already had "many [members] in Southern California." In addition, Flexer testified that CEFCU initiated cancellation proceedings based on her observation of SDCCU's mark in San Diego, which she believed was "very similar" to CEFCU's marks.

This testimony is relevant because a senior registrant can enjoin a junior user of an infringing mark if it is likely that the senior registrant will expand into the junior user's market. *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 364 (2d Cir. 1959); *see also Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1250–51 (9th Cir. 2022) (citing *Dawn Donut* with approval). CEFCU's employee's testimony that it was just a matter of time before actual confusion occurred in California, combined with CEFCU's overall growth in California and existing members in Southern California, provided new context to CEFCU's likelihood-of-confusion allegation. This new context reasonably put SDCCU in apprehension that CEFCU would sue for infringement of its registered and common-law marks. Thus, a live controversy existed at the pleading stage.

---

proceedings—the TTAB cannot award such damages. *Rhoades*, 504 F.3d at 1158; *id.* at 1158 n.6 ("The powers of the TTAB are limited to determining and deciding the respective rights of trademark registration." (cleaned up)). CEFCU's attempt to prove "potential for damage" in the TTAB action should not have put SDCCU in reasonable apprehension of an infringement suit.

2.

CEFCU next argues that the district court erred in concluding that it possessed ongoing Article III jurisdiction at the summary judgment phase. CEFCU contends that SDCCU was required to re-prove the existence of a live controversy at the summary judgment phase. We disagree.

CEFCU made the strategic decision to assert a factual jurisdictional attack in its motion to dismiss. "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A factual attack on jurisdiction is also called a "speaking motion." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

> Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. . . . The standards applicable to a Rule 12(b)(1) speaking motion differ greatly from the standards for ruling on a motion for summary judgment. Faced with a factual attack on subject matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* (cleaned up). If the factual basis for jurisdiction is disputed, "[t]he plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

The district court understood CEFCU was "mounting a factual attack on subject matter jurisdiction" in its motion to dismiss. *San Diego Cnty. Credit Union*, 344 F. Supp. 3d at 1153. The district court did not expressly hold that SDCCU proved subject matter jurisdiction by a preponderance of the evidence; however, it examined hundreds of pages of documents outside the complaint, including the cancellation petition, CEFCU's proposed amendment to its cancellation petition, discovery disclosures, deposition transcripts, as well as attorney and witness affidavits laying foundation for those documents. This evidence was sufficient to meet SDCCU's burden under the preponderance of the evidence standard because, as we have explained, it was "more likely than not" that SDCCU reasonably apprehended an infringement suit from CEFCU. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). Because SDCCU established a justiciable controversy by a preponderance of the evidence at the pleading stage, the district court did not need to consider additional evidence at the summary judgment stage—the district court had already "resolv[ed] factual disputes" in a manner that "it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56." *Thornhill Pub. Co.*, 594 F.2d at 733.

The district court appeared to recognize these principles by relying upon *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013), to apply a mootness analysis at the summary judgment phase. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993) ("[W]hile the initial burden of

establishing the trial court's jurisdiction rests on the party invoking that jurisdiction, once that burden has been met courts are entitled to presume, absent further information, that jurisdiction continues."). In *Already*, Nike sued Already for infringing its "Air Force 1" mark. 568 U.S. at 88. Already counterclaimed that the mark was invalid. *Id.* Nike later issued a "Covenant Not to Sue," in which Nike promised not to sue Already for infringement related to its existing designs. *Id.* at 88–89. Nike moved to dismiss its claims with prejudice, and moved to dismiss Already's counterclaim without prejudice. *Id.* Finding no live controversy, the district court granted the motion and the Second Circuit affirmed. *Id.* at 89–90.

The Supreme Court affirmed. It explained that a case becomes moot "when the issues presented are no longer 'live[,]' the parties lack a legally cognizable interest in the outcome," or "the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* at 91 (citations and internal quotation marks omitted). Because the case in *Already* was alleged to have become moot due to the Nike's voluntary cessation of wrongdoing, the Supreme Court placed the burden on Nike "to show that it could not reasonably be expected to resume its enforcement efforts against Already." *Id.* at 92 (citation and internal quotation marks omitted). Nike met that burden because it had made and delivered an "unconditional and irrevocable" covenant not to sue. *Id.* at 93.

Based on the principles articulated in *Already*, we agree with the district court that CEFCU bore the burden of proving that the case was moot at the summary judgment phase. Nike put Already in fear of infringement liability by suing for infringement; Nike therefore bore the burden of dispelling that fear. And CEFCU's conduct in the TTAB

proceedings similarly sparked SDCCU's fear of infringement liability. *Already* therefore places the burden on CEFCU to dispel SDCCU's fear. But *Already* does not hold that the *only* method by which CEFCU can do so is through a binding promise not to sue. To be sure, if a defendant provided similar evidence that eliminated, as a matter of law, a declaratory-judgment plaintiff's reasonable apprehension of an infringement action, such evidence would be sufficient to moot the case. We need not decide what that evidence might be; we merely conclude that CEFCU's evidence in this case was insufficient to moot the case because it did not remove SDCCU's reasonable apprehension of suit as a matter of law.

Not only did CEFCU fail to provide a binding promise that it would not sue for infringement (as Nike did in *Already*), but CEFCU affirmatively refused SDCCU's stipulation that SDCCU was not infringing CEFCU's marks. CEFCU now claims it was merely unwilling to waive its jurisdictional defenses, but that limited characterization of its objection is not apparent from the record. And although CEFCU submitted Flexer's deposition testimony suggesting that CEFCU did not plan to sue SDCCU for trademark infringement, it provided no assurances to that effect. Moreover, Flexer's testimony was conspicuously couched in present-tense language. She did not dispute SDCCU's use of its mark "to date," and pointedly would "not speculate with regard to the future." Given Portscheller's previous testimony suggesting CEFCU was growing in California and that it was only a matter of time before actual confusion occurred, Flexer's restrained testimony served to reaffirm SDCCU's reasonable apprehension about whether it could be subject to legal action for the current use of its mark in Southern California. The district court therefore possessed

Article III jurisdiction at the summary judgment phase, and we affirm its entry of judgment in favor of SDCCU on SDCCU's non-infringement claims.

3.

Finally, we come to the question presented at the beginning of this opinion: whether the district court possessed Article III jurisdiction to proceed to trial on SDCCU's invalidity claim. We conclude it did not.

In the patent context, it is "usually" an error to reach the issue of validity "in the face of a finding of non-infringement." *Lockwood v. Langendorf United Bakeries, Inc.*, 324 F.2d 82, 91 (9th Cir. 1963). "To do so . . . would be to decide a hypothetical case." *Id.*; *see also Altvater v. Freeman*, 319 U.S. 359, 363 (1943) ("To hold a patent valid if it is not infringed is to decide a hypothetical case."). This premise makes equal sense in the trademark context.[8] But it is not a hard-and-fast rule, *cf. Cardinal Chem. Co.*, 508 U.S. at 89–90 (rejecting "[t]he Federal Circuit's current practice of routinely vacating declaratory judgments regarding patent validity following [an appellate] determination of noninfringement"), nor do we adopt it as such. As always, the question is whether, based on "all the circumstances," there remains "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas.*, 312

---

[8] We regularly borrow on principles from patent cases to guide our analyses in trademark cases. *See, e.g.*, *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) ("We interpret the fee-shifting provisions in the Patent Act and the Lanham Act in tandem." (internal citation omitted)).

U.S. at 273); *see also Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 867–68 (9th Cir. 2017) (applying *MedImmune* to determine mootness of claims seeking declaratory relief). In other words, we must determine whether the grant of summary judgment in favor of SDCCU on its non-infringement claims presented a "change[] in the circumstances that prevailed at the beginning of the litigation" which forecloses the possibility of SDCCU obtaining "meaningful relief" by pursuing its invalidity claim. *See Gator.com Corp.*, 398 F.3d at 1129.

In *Altvater*, plaintiffs alleged that defendants infringed patents covered by their license. 319 U.S. at 360. Defendants asserted a counterclaim, seeking a declaration that the patents were invalid. *Id.* at 360–61. The district court held that defendants did not infringe *and* that the patents were invalid. *Id.* at 362. The Eighth Circuit reversed in part, holding "that when the District Court found . . . no infringement, the other issues [including patent invalidity] became moot and there was no longer a justiciable controversy between the parties." *Id.* The Supreme Court reversed. It rejected plaintiffs' argument that, "so long as [defendants] continue to pay royalties, there is only an academic, not a real controversy, between the parties" regarding the invalidity counterclaim. *Id.* at 364. A real controversy continued to exist because defendants continued to manufacture and sell items that were alleged to fall under the patents, and plaintiffs continued to demand royalties. *Id.* at 365.

The facts in *Altvater* mirrored those in *MedImmune*. *See* 549 U.S. at 130 (comparing the two). And, as we previously mentioned, *MedImmune* reaffirmed *Altvater*'s reasoning that a controversy may be established upon proof of "plaintiff's self-avoidance of imminent injury [that] is coerced by

threatened enforcement action of a private party." *Id.* at 130 (emphasis deleted). The lesson from these cases is that federal courts lack Article III jurisdiction to review questions of trademark validity unless the plaintiff faces a threat of infringement liability or otherwise suffers a justiciable injury that is fairly traceable to the trademark's validity.

Here, in contrast to the justiciable injuries found in *Altvater* or *MedImmune*, the record is devoid of any evidence that an ongoing threat of liability is causing SDCCU to engage in any "self-avoidance" of harm, *MedImmune*, 549 U.S. at 130, or is "chilling" SDCCU's use of its mark. *Chesebrough*, 666 F.2d at 397. Much to the contrary: SDCCU at one point amended its complaint to allege that it had *increased* the use of its mark in direct response to CEFCU's cancellation petition. As the Supreme Court did in *Already*, we conclude that this case is distinguishable from *Altvater* because "the whole point is that [SDCCU] is free to [market its services] without any fear of a trademark claim." 568 U.S. at 96.[9]

---

[9] *Cardinal Chemical* is also inapposite. There, the Federal Circuit applied its practice of routinely vacating a district court's finding of patent invalidity as "moot" whenever it affirmed a finding that there was no patent infringement. 508 U.S. at 88–90. The Supreme Court overruled this practice, explaining that, if the district court had jurisdiction to consider an invalidity claim, then so too did the Federal Circuit. *Id.* at 98–99. But here, the district court itself lacked jurisdiction to hear SDCCU's invalidity counterclaim, which is an issue that *Cardinal Chemical* expressly declined to address. *Id.* at 95; *see also Already*, 568 U.S. at 95 (distinguishing *Cardinal Chemical* on this basis). Moreover, CEFCU did not assert an "actual[] . . . charge[]" of trademark infringement against SDCCU, *see Cardinal Chemical*, 508 U.S. at 96, so the only jurisdictional basis for SDCCU's invalidity claim was its reasonable apprehension of an infringement suit, *see Chesebrough*, 666

At oral argument, counsel for SDCCU argued that SDCCU retained standing to pursue its invalidity claim even after it obtained summary judgment on its non-infringement claims because the still-pending cancellation proceedings might be affected by a finding regarding the validity of CEFCU's common-law mark. But counsel did not explain why a potential impact on the cancellation proceedings could satisfy the requirements of Article III standing. To the contrary, we have held that a "simple opposition proceeding in the Patent and Trademark Office generally will not raise a real and reasonable apprehension of suit," and so is insufficient to show injury-in-fact. *See Chesebrough*, 666 F.2d at 396. Accepting SDCCU's argument would mean that any time a party seeks to cancel a registration due to prior use of a common-law mark, a controversy is created such that the registrant may circumvent the TTAB's jurisdiction. We reject that premise.

Moreover, we note that a future conflict over CEFCU's common-law trademark rights is extremely unlikely as a matter of law. Unlike the ability of a senior *registrant* to enjoin a junior user of an infringing mark when it is likely that the *registrant* will move into the junior user's territory, *see Dawn Donut*, 267 F.2d at 364, the rights of a *common-law trademark owner* are generally limited to the territory in which he has already used that trademark. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017) ("[C]ommon-law trademark rights extend only to the territory where a mark is known and recognized, so a later user may sometimes acquire rights in pockets geographically remote from the first user's territory.") *abrogation on other*

F.2d at 396. That apprehension was negated by the district court's grant of summary judgment on SDCCU's non-infringement claim.

*grounds recognized by Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 38 (9th Cir. 2022). Aside from Portscheller's testimony regarding the presence of CEFCU members in Southern California, the record provides no suggestion that CEFCU developed common-law trademark rights there. And given the district court's grant of summary judgment on non-infringement, Portscheller's testimony can no longer give rise to a reasonable apprehension of suit.

In sum, once SDCCU obtained an adjudication stating that the use of its mark does not infringe CEFCU's common-law mark, SDCCU lost any personal stake it once had in invalidating CEFCU's common-law mark. We recognize the significant resources that the parties and the district court have already invested in holding a bench trial on this issue. But "sunk costs to the judiciary does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lacks a continuing interest." *Gator.com Corp.*, 398 F.3d at 1132 (alterations accepted). Although we must "eschew undue formalism" in analyzing mootness, we "must nevertheless operate within the well-defined contours of Article III." *Id.* Those constitutional contours require us to vacate the district court's judgment as to the invalidity of CEFCU's common-law trademark, "NOT A BANK. BETTER."

## B.

The second issue for review is whether the district court erred in awarding attorneys' fees to SDCCU under 15 U.S.C. § 1117(a). Under that statute, a "prevailing party" may be awarded attorneys' fees "in exceptional cases." 15 U.S.C. §

1117(a). CEFCU challenges this award on numerous grounds.[10]

Our conclusion that the district court lacked jurisdiction to proceed to trial on SDCCU's invalidity claim does not, by itself, preclude jurisdiction to award attorneys' fees. *See, e.g.*, *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 968 (9th Cir. 2014) (collecting cases); *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir.1999) ("No Article III case or controversy is needed with regard to attorneys' fees . . . because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot."). When the district court grants a fee award that is "collateral to the merits," it does not risk "adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992).

Here, the district court's decision to award attorneys' fees under § 1117(a) was partly based on the merits of the

---

[10] We reject CEFCU's near-frivolous argument that a party must prove "infringement" to be entitled to attorneys' fees under § 1117(a). The first sentence of § 1117(a) discusses the measure of damages to be awarded upon proof of trademark infringement. Six sentences later, the statute states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Obviously, a defendant in an infringement case—or, as in this case, a plaintiff in a declaratory judgment action seeking a declaration of non-infringement—can be the "prevailing party" and can therefore be entitled to reasonable attorneys' fees, without proof that infringement occurred. *See, e.g.*, *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000) ("The above standard for exceptional circumstances applies to prevailing defendants as well as prevailing plaintiffs under the Lanham Act"). CEFCU cites no authority to the contrary.

invalidity claim over which it lacked jurisdiction. We therefore vacate that award.

The district court concluded that SDCCU was the prevailing party because of the non-infringement relief it obtained on summary judgment *and* because of its victory in invalidating CEFCU's common-law mark at trial. Although the question whether SDCCU remains a prevailing party even absent its trial victory is a legal question subject to de novo review,[11] we leave that question for the district court to

---

[11] SDCCU urges us to adopt the district court's prevailing-party determination under an abuse of discretion standard. SDCCU recognizes that we have previously reviewed prevailing party determination under § 1117(a) de novo, *Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010), but SDCCU claims that our precedent was abrogated by *Octane Fitness, LLC v. ICON Health & Fitness, Inc*, 572 U.S. 545 (2014), and *Highmark Inc. v. Allcare Health Management System., Inc.*, 572 U.S. 559 (2014). We disagree.

*Octane Fitness* and *Highmark* addressed only the exceptional-case requirement. 572 U.S. at 554; 572 U.S. at 563. And *Highmark* made clear that it is "the exceptional-case determination" that must "be reviewed only for abuse of discretion." 572 U.S. at 563. It did nothing to disturb the premise that "questions of law are reviewable *de novo*." *Id.* (citation and internal quotation marks omitted). A prevailing party determination is a question of law because "[t]he term 'prevailing party,' . . . is a term of art that courts must interpret consistently throughout the United States Code." *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009); *see also Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 n.4 (2001) ("We have interpreted these fee-shifting provisions consistently and so approach the nearly identical provisions at issue here." (internal citation omitted)).

Notably, the Eighth Circuit held that *Highmark* did not displace de novo review for prevailing party determinations. *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 906 n.5 (8th Cir. 2016). In two separate opinions disposing of the same case, the Second Circuit applied de novo

consider in the first instance because of its "familiarity with the progress of the litigation through the pleading, discovery," and trial stages. *Maher v. Gagne*, 448 U.S. 122, 130 (1980).

The district court should also revisit its exceptional-case determination. In making that determination, the district court relied in part upon conduct that occurred at trial. Although we conclude that the district court lacked subject matter jurisdiction to proceed to trial on SDCCU's invalidity claim, our conclusion "does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction." *Willy*, 503 U.S. at 137. Thus, the district court is not precluded from considering CEFCU's litigation conduct leading up to and during the trial. But because an exceptional-case determination lies within the discretion of the district court, *see Highmark*, 572 U.S. at 563; *SunEarth*, 839 F.3d at 1181, we express no view on this issue and

---

review to a prevailing party determination in one opinion, *Manhattan Rev. LLC v. Yun*, 919 F.3d 149, 152 (2d Cir. 2019) ("Whether a litigant qualifies as a 'prevailing party' constitutes a question of law warranting de novo review."), and applied *Highmark*'s abuse of discretion standard to the exceptional-case determination in the other. *Manhattan Rev. LLC v. Yun*, 765 F. App'x 574, 577 (2d Cir. 2019) (unpublished). And although the Federal Circuit did not expressly say it was applying de novo review to its prevailing party determination in *Raniere v. Microsoft Corp.*, it seemed to apply a de novo standard. 887 F.3d 1298, 1303 (Fed. Cir. 2018). There, the Federal Circuit analyzed several Supreme Court cases "address[ing] the issue of what constitutes a 'prevailing party,'" and, in doing so, determined that appellees were prevailing parties without deferring to the district court's conclusion. *Id.* at 1303–07. We join our sister circuits in holding that *Highmark* does not demand review of a prevailing-party determination under an abuse of discretion standard.

remand to the district court for consideration in the first instance.

## C.

The third issue is whether CEFCU is subject to personal jurisdiction in California. We review the existence of personal jurisdiction de novo. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021).[12]

A defendant is subject to specific personal jurisdiction in the forum state if: (1) the defendant performed an act or consummated a transaction by which it purposely directed its activity toward the forum state; (2) the claims arose out of defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable. *Id.* at 979. Analysis of the first prong—"purposeful availment or direction"—turns on the nature of the underlying claims. *Id.* "Trademark infringement is treated as tort-like for personal jurisdiction purposes, and so we focus on purposeful direction." *Id.* SDCCU bears the burden of proving the first two prongs. *Id.*

---

[12] The parties dispute the correct evidentiary standard to apply to CEFCU's personal jurisdiction defense. The two evidentiary standards that could apply are the prima facie and preponderance of the evidence standards. *See, e.g.*, 4 Wright, Miller, & Steinman, *Federal Practice and Procedure* § 1067.6 at 581–645 (4th ed. 2015). CEFCU urges us to reverse the judgment because SDCCU made out only a prima facie showing of personal jurisdiction, *see Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977), while SDCCU responds that meeting said prima facie standard was sufficient because CEFCU failed to preserve its personal jurisdiction defense. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1316–17 (9th Cir. 1998). We need not resolve this issue because, even applying the preponderance of the evidence standard, we conclude that CEFCU is subject to personal jurisdiction in California based on the very documents that CEFCU filed with its motion to dismiss.

Once those are established, the burden shifts to CEFCU to prove that the exercise of personal jurisdiction is unreasonable. *Id.*

Analysis of this three-prong test leads to the conclusion that CEFCU is subject to personal jurisdiction in California regarding SDCCU's non-infringement claims.[13]

First, CEFCU purposefully directed its activity toward California by using its trademarks there and by operating several branches in the Bay Area.[14] CEFCU further directed its activity toward California when it filed its cancellation petition with the TTAB and alleged that the registration for SDCCU's trademark (used solely in California) must be

---

[13] Where—as here—"a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted); *see also*, *Ayla*, 11 F.4th at 983 (drawing a distinction between contract and tort claims in specific personal jurisdiction analysis); *Fiore v. Walden*, 688 F.3d 558, 593 (9th Cir. 2012) (Ikuta, J., dissenting) ("We analyze personal jurisdiction on a claim-by-claim basis."), *reversed*, 571 U.S. 277 (2014). Here, the only claims that must be reviewed for personal jurisdiction are SDCCU's non-infringement claims against CEFCU. Aside from SDCCU's invalidity claim—which we have already explained must be vacated for lack of Article III jurisdiction—SDCCU's non-infringement claims are the only claims upon which an adverse judgment was entered against CEFCU.

[14] *See, e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) ("Because the [in-forum plaintiffs] used their trademarks in Indiana, any infringement of those marks would create an injury which would be felt mainly in Indiana, and this, coupled with the [out-of-state] defendant's 'entry' into the state by the television broadcasts, was sufficient for the exercise of personal jurisdiction." (describing and citing with approval *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410 (7th Cir. 1994))).

cancelled because of CEFCU's prior use of its marks (used in Illinois *and California*). Thus, the first prong is met.

Second, SDCCU's non-infringement claims arose out of CEFCU's use of its trademarks in California because those are the very same trademarks that CEFCU used to attack SDCCU's trademark registration in the TTAB proceedings. Moreover, CEFCU's conduct in those proceedings put SDCCU in a reasonable apprehension that it would be sued for use of its marks in California. *Cf. Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1084, 1087–89 (9th Cir. 2000) (holding that California had personal jurisdiction over declaratory judgment defendant because of defendant's challenge to plaintiff's registration for its domain name, which challenge was filed with an agency located in Virginia but affected the plaintiff's ability to use the domain name in California), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). In addition, Flexer testified that CEFCU filed its TTAB cancellation petition because of her observation of SDCCU's billboard in San Diego. As in *Bancroft*, then, CEFCU's cancellation petition was "expressly aimed at California because it individually targeted [SDCCU], a California corporation doing business almost exclusively in California" and "the effects of the [petition] were primarily felt, as [CEFCU] knew they would be, in California." *Id.* at 1088. Thus, the first two prongs of our test for specific personal jurisdiction are met.

Regarding the third prong, CEFCU does not explain why the exercise of personal jurisdiction in California is unreasonable. Nor could it. CEFCU operates, uses its trademarks, and serves its credit union members in California. Under these circumstances, there is nothing unreasonable about litigating a trademark infringement case

in California. Thus, we conclude that SDCCU established by a preponderance of the evidence that CEFCU is subject to personal jurisdiction in California regarding SDCCU's non-infringement claims.

## D.

The fourth issue is whether the district court erred in dismissing without prejudice CEFCU's counterclaim for lack of statutory subject matter jurisdiction. CEFCU's counterclaim mirrored the relief it had originally sought before the TTAB; that is, it sought to cancel SDCCU's trademark registration. SDCCU argues that the district court misinterpreted 15 U.S.C. § 1119 to conclude that it lacked statutory subject matter jurisdiction over CEFCU's counterclaim. CEFCU responds that SDCCU lacks standing to appeal this dismissal because it is favorable to SDCCU.

True, the general rule is that litigants have no standing to appeal favorable decisions. *E.g.*, *United States v. Good Samaritan Church*, 29 F.3d 487, 488 (9th Cir. 1994). But one exception to the general rule states that a defendant has standing to appeal dismissal of a complaint *without* prejudice when he sought to have it dismissed *with* prejudice. *Farmer v. McDaniel*, 98 F.3d 1548, 1549 (9th Cir. 1996), *abrogated on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000); *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1383 (Fed. Cir. 2002) (applying *Farmer* to conclude that a defendant in a patent infringement case has standing to appeal a without-prejudice dismissal after moving to dismiss with prejudice). SDCCU's appeal falls within this exception. SDCCU moved for summary judgment on CEFCU's counterclaim. By appealing the district court's dismissal of that claim without prejudice, SDCCU is "appeal[ing] from a judgment in its favor [because] the

judgment is not as favorable as [SDCCU] sought," *H.R. Techs.*, 275 F.3d at 1380, and now will be required to go back to the TTAB to relitigate that issue. *Cf. Farmer*, 98 F.3d at 1549. That is a sufficient grievance to maintain standing to appeal.

The district court *sua sponte* dismissed the counterclaim for lack of statutory subject matter jurisdiction after granting summary judgment on the first, second, and fifth counts. As a result of those counts being resolved, it concluded that this case no longer "involve[ed] a registered mark" under 15 U.S.C. § 1119. That statute reads:

> In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.

15 U.S.C. § 1119.

SDCCU argues that "action" refers to the entire case and that this "action" still "involv[es] a registered mark" because the parties' claims originally involved their registered marks. Thus, SDCCU contends, the district court possessed ongoing statutory subject matter jurisdiction over CEFCU's counterclaim. We disagree.

In *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*, the plaintiff sought: (1) a declaration that defendant breached a consent-to-use agreement; and (2) cancellation of defendant's trademark registrations based on a likelihood of confusion with

plaintiff's marks. 744 F.3d 595, 598 (9th Cir. 2014). The district court dismissed both claims, but the plaintiff appealed only the dismissal of his cancellation claim. *Id.* We held that § 1119 would not "provide an independent basis for subject-matter jurisdiction on remand standing alone." *Id.* We held that § 1119 provides cancellation only as relief to a party who has proved infringement because § 1119 is "remedial, not jurisdictional." *Id.* at 598 (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 99 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013)). Because the plaintiff did not appeal "the dismissal of the only claims it bought that could support jurisdiction" under § 1119, we affirmed.

That same syllogism dictates the outcome here. CEFCU's cancellation counterclaim under § 1119 must have an independent jurisdictional basis. And SDCCU has understandably not appealed from the district court's judgment on the only claims that could arguably provide such a basis—i.e., SDCCU's non-infringement claims. Like the plaintiff in *Airs Aromatics,* SDCCU does not ask us to reinstitute those non-infringement claims such that CEFCU could potentially prove infringement and obtain cancellation on remand. We therefore affirm the district court's dismissal of CEFCU's counterclaim.

## III.

We vacate the district court's judgment and remand with instructions for further proceedings not inconsistent with this opinion. On remand, the district court is instructed to dismiss count four of SDCCU's complaint for lack of Article III jurisdiction, reassess its exceptional-case and prevailing-party determinations and, if necessary, revisit the amount of its fee award.

Pursuant to Federal Rule of Appellate Procedure 39(a) and Ninth Circuit General Order 4.5(e), each party shall bear its own costs on appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**